UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VOLKSWAGON AG,**
et al.,

                    **Plaintiffs,**            **CIVIL ACTION NO. 05-CV-72654-DT**

        **vs.**

                                      **DISTRICT JUDGE DENISE PAGE HOOD**

**DORLING KINDERSLEY**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**PUBLISHING, INC.,**
                    **Defendant.**
_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL DISCOVERY

I.      **Facts and Procedural History**

        This matter comes before the Court on Defendant's Motion to Compel Discovery filed on April

12, 2006.  (Docket no. 24).  This Court received briefing on the motion and heard oral argument on

June 7, 2006.  Thereafter, this Court entered an Order granting in part, holding in abeyance in part, and

deeming withdrawn in part, the motion.  (Docket no. 37).  The parties then submitted supplemental

briefing, and Plaintiffs submitted a supplemental privilege log.  (Docket nos. 41, 42).  On August 24,

2006, the Court ordered Plaintiffs to submit *in camera* copies of the documents in question.  (Docket no.

53).  The Court has reviewed the briefs, the supplemental privilege log, and the documents submitted

for *in camera* review.  This motion is therefore ready for ruling under 28 U.S.C. § 636(b)(1)(A).  (Docket

no. 25).

        Plaintiffs Volkswagon AG and Volkswagon of America, Inc. allege in this action that Defendant

Dorling Kindersley Publishing, Inc. (DK), a publisher of children's books, infringed and diluted

Volkswagon's registered trademarks and trade dress in two books that Defendant published, "Fun Cars"

and "On the Road."  Plaintiffs assert claims for trademark infringement, false designation of origin, and

-1-

trademark/trade dress dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a) and (c). Defendant asserts the affirmative defenses of consent/acquiescence, estoppel/laches, fair use and the First Amendment.

Defendant seeks an order compelling Plaintiffs to respond to Defendant's First Request for Production of Documents dated December 16, 2005. Specifically, Defendant seeks responses to its Request numbers 2, 5-7, 14-16, and 20-22. Defendant also seeks an order compelling Plaintiffs to respond to Defendant's Subpoena Request no. 2 served upon a third-party, Continental Enterprises (Continental), on January 30, 2006.[1] The parties have divided the issues to be decided into two groups. The first group includes Defendant's Document Request 2 and Subpoena to Continental Request 2. The second group includes Defendant's Document Requests 5-7, 14-16, and 20-22.

With respect to the first grouping, the parties' supplemental briefs and Plaintiffs' supplemental privilege log list 25 documents which Defendant is now moving for Plaintiffs to disclose.[2] These are the documents that the Court has before it for its *in camera* review. The last document, number 25, is

---

[1] Defendant moved to compel Continental's responses to this subpoena in US District Court for the Southern District of Indiana. Pursuant to a stipulation entered into in that case, the parties agree that Plaintiffs have possession or control over the files that are responsive to Subpoena Request 2. They further agree to resolve their dispute regarding that subpoena request in conjunction with Defendant's pending motion to compel in this Court such that the resolution of the motion in this Court will simultaneously resolve the parties' dispute as to Subpoena Request 2.

[2] Defendant's Request for Production of Documents number 2 and Subpoena Request number 2 also seek documents and communications within Continental's files that relate to Plaintiffs' enforcement of its Trademarks/Trade Dress against third parties and their licensing of third parties to use their Trademarks/Trade Dress. As to Continental's enforcement files related to third parties, Plaintiffs' were previously ordered by this Court to supplement their response. Therefore, documents pertaining to Plaintiffs' enforcement efforts are not discussed further in this order.

As to the licensing of third parties to use Plaintiffs' Trademarks/Trade Dress, the parties agreed at the hearing that Continental is not involved in this process. Therefore, to the extent Defendant's Request for Production of Documents number 2 and its Subpoena Request number 2 seek such information from Continental's files, the issue is moot. Documents/communications pertaining to Plaintiffs' third party licensing that are contained within Plaintiffs' files are related to Defendant's Request for Production of Documents numbers 5-7, 14-16, and 20-22, which are discussed below.

listed as a letter from VW paralegal Scipione to outside counsel.  Defendant withdraws its request for production of this document in its supplemental brief.  (Docket no. 41 n.1).  Therefore, there are now 24 documents at issue.  Plaintiff claims that all of these documents are protected from disclosure by the work product doctrine and that document numbers 2, 11, 14 (copy of document 2), 15, and 16 are also protected by the attorney-client privilege.  (Supp. priv. log & docket no. 42).

## II.     24 Documents Withheld Pursuant to Defendant's Document Request 2 and Subpoena to Continental Request 2

### A.     *Governing Law*

Rule 26(b)(1), Fed. R. Civ. P., provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  However, Rule 26(b)(3) requires the requesting party to make a certain showing for discovery of documents and tangible things otherwise discoverable and "prepared in anticipation of litigation or for trial" by or for another party or another party's representative.  The Court is to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Fed. R. Civ. P. 26(b)(3).

The elements of the attorney-client privilege are: (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) unless the protection is waived.  *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998).  Questions of privilege are determined by federal common law in federal question cases such as this one.  (*Id.*)  The burden of establishing privilege and non-waiver rests with the person asserting it.  *In re VisionAmerica, Inc. Sec. Litig.*, 2002 WL 31870559 (W.D. Tenn. Dec. 18, 2002) (slip copy at *2).

-3-

The work product doctrine "generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006). Courts have developed a procedure to analyze a claim that materials were prepared in anticipation of litigation or trial and are therefore protected by the work product doctrine. *In re OM Sec. Litig.*, 226 F.R.D. 579 (N.D. Ohio Feb. 28, 2005) (citing *Toledo Edison Co. v. G.A. Techs., Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988)). The requesting party must first show that the materials requested are relevant to the subject matter involved in the pending litigation and not privileged. If the requesting party meets this burden, the objecting party must show that the material was prepared in anticipation of litigation or for trial by or for that party or that party's representative. If the objecting party meets this burden, the requesting party must show that it has substantial need of the material and is unable to obtain the substantial equivalent of the materials by other means. Finally, if the requesting party makes these showings, the court will still protect the material from disclosure if the objecting party shows that the materials are mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation. (*Id.* at 584).

  B.   *Application of the Law*

    1.   *Documents 2 and 14*

Documents 2 and 14 are the same document. They are a letter from Continental Enterprises' General Counsel Jessica Lacy to VW paralegal Linda Scipione. The letter accompanied an allegedly infringing product sent from Lacy as well as a copy of an April 29, 2002 letter from Defendant's counsel Gloria Phares. Plaintiffs argue that the document is a communication between an attorney (Ms. Lacy) and her client (Ms. Scipione and VW) and protected by the attorney-client privilege. (Docket no. 42 at 5-6). Plaintiffs have described Continental as a private investigation firm that specializes in assisting

-4-

trademark holders in investigating and rectifying matters of trademark infringement.  (Docket no. 27 at 8).

Defendant contends that there was no attorney-client relationship because Ms. Lacy is not VW's lawyer and Continental was not engaged to provide legal advice to VW.  The Court agrees that Plaintiffs have not shown that an attorney-client relationship existed between Lacy and Scipione or VW. Moreover, it is clear from the Court's *in camera* review of the letter that it is not a communication made by Scipione or VW relating to them seeking legal advice from Lacy.  Docket nos. 2 and 14 are not protected by the attorney-client privilege.

Although Plaintiffs listed work product as a basis for withholding these documents, they made no argument in their supplemental brief on this basis.  (Docket no. 42 at 9-10).  Defendant contends that it could not be work product because it was prepared some three years before this case was filed and hence was not made in anticipation of litigation.  Defendant also argues that no legal theory or strategy could be contained in a letter from Continental's attorney.  (Docket no. 41 at 4).  The Court finds that Defendant has carried its burden of showing relevancy and that the document is not privileged.  The burden then falls to Plaintiffs to show that the document was produced in anticipation of litigation or for trial by or for that party or that party's representative.

In order for the document to have been prepared in "anticipation of litigation," the Sixth Circuit requires that the document be "prepared or obtained because of the prospect of litigation." *United States v. Roxworthy,* 457 F.3d 590, 593 (6ᵗʰ Cir. 2006).  Documents prepared in the ordinary course of business are not covered.  *Id.*  Thus, a document will not be covered if it would have been prepared in substantially the same manner irrespective of the anticipated litigation.  *Id.*  A party must have had a subjective belief that litigation was a "real possibility," and that belief must have been objectively reasonable.  *Id.* at 594. A party satisfies its burden of showing that a document was

prepared in anticipation of litigation in the usual ways such as through affidavits, depositions, and interrogatories. *Id*. at 597.

In insurance cases, courts have noted that there is no hard and fast rule as to when the insurance company's activity shifts from the ordinary course of business to anticipation of litigation. *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981). The *Fine* court found the dividing line to fall when the reports were made "in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resistable claim." *Id*. at 423. Another court noted "the need for objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report" for the work product protection to apply. *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982).

Continental is in the business of investigating possible instances of trademark infringement. Plaintiffs' counsel at oral argument said that Continental does the "initial work in collecting – in collecting evidence and sending out cease-and-desist letters. If the matter isn't resolved, it's typically referred to an outside law firm such as my own." (Tr. of motion hearing, June 7, 2006, at 19). According to Plaintiffs, Continental has assisted Plaintiffs in resolving hundreds, if not thousands, of trademark infringement matters. (Docket no. 27 at 6). The Court concludes from these comments that some cases on which Continental collects evidence are resolved without the involvement of a law firm and ensuing litigation. In this way Continental is similar to an insurance company which produces reports which may or may not later be used in litigation. Therefore, the question is whether Continental's documents were prepared when Plaintiffs had an objectively reasonable subjective belief that litigation was a real possibility.

The letter referenced by documents 2 and 14 was written some three years before this action was filed. Plaintiffs have failed to show by objective facts that they had an objectively reasonable subjective belief that litigation was a real possibility at the time this document was prepared. In other words, they have not shown that the possibility of litigation had changed from a theoretical possibility to a real possibility. Also, it appears likely given the nature of Continental's business that this document would have been prepared by Continental independent of any anticipation of use in litigation. Plaintiffs have not shown otherwise. Accordingly, docket nos. 2 and 14 are not protected by the work product doctrine.

### 2.    Document nos. 15 and 16

These two documents are similar to the above in that they are letters written by Lacy to Scipione at VW in the same month as the above letter. The letters transmit allegedly infringing products and docket no. 16 contains some comments by Lacy regarding Defendant's argument in a letter written by its counsel to Lacy. Defendant has satisfied its burdens of showing relevancy and non-privilege. Plaintiffs have failed to show that these documents are protected by the attorney-client privilege for the same reasons identified above. Also, Plaintiffs have failed to show that these documents were prepared after they had formed a belief that litigation was a real possibility and, thus, were made "in anticipation" of litigation. The nature of Continental's business also makes it probable that the letters would have been prepared independent of any anticipation of litigation, and Plaintiffs have not shown otherwise. Document numbers 15 and 16 are not protected by the attorney-client privilege or the work product doctrine.

### 3.    Document nos. 12 and 13

These two documents are drafts of document number 2 and contain handwritten edits. Plaintiffs argue that these documents are protected by the work product doctrine. Defendant has carried its burden, and Plaintiffs' argument fails for the same reason that it failed as to the final draft in document 2. Document numbers 12 and 13 are therefore not protected by the work product doctrine.

### 4.  *Document no. 3*

This document is a one-page letter labeled as an "investigation report" written by Continental investigator Ringle to VW paralegal Linda Scipione. It is dated September 22, 2000 and describes Continental's discovery of the book "Fun Cars" which was published by Defendant. This is clearly a document prepared very early in Continental's investigation of Defendant. As seen from above, Plaintiffs have not shown that at this early stage there was a real possibility of litigation. There could have been many possible outcomes of the investigation including a non-judicial resolution of the matter. The Court therefore finds that Defendant has carried its burdens, but Plaintiffs have failed to show that this document was prepared in anticipation of litigation. It is not covered by the work product doctrine.

### 5.  *Document nos. 4-8, 19 and 21*

Documents 4-6, 8, 19 and 21 are Continental Enterprises' forms specifying the details of cease and desist or demand letters to be created by Continental and sent to Defendant or Waterstone, a retail business that sold the books of Defendant at issue. Most of the documents are dated in 2001. Some of the documents bear no date, but the attached demand letters are dated in 2001 and these forms would have been prepared prior to the actual letters. These forms and letters show that Continental was still in the process of attempting to obtain a non-judicial resolution of these alleged

infringements.  Defendant has carried its burdens of showing relevancy and non-privilege.  Plaintiffs

have not shown that these documents were prepared in "anticipation of litigation."  These documents

would also have likely been prepared independent of the anticipation of litigation.  For these

reasons, they are not protected by the work product doctrine.

Document no. 7 is a transmission verification report and fax cover sheet transmitting one of

these requests for the creation of a demand letter.  It is dated November 2001.  For the same reasons

as discussed above, this document is not protected by the work product doctrine.

6.      *Document no. 9*

This is a "demand calculations" form prepared by a Continental investigator.  The amounts

reflected are included in the request for demand form dated in November 2001.  For the same

reasons as discussed above, the Court finds that Defendant has shown relevancy and non-privilege,

but this form was not prepared "in anticipation" of litigation and would have been prepared

independent of any anticipated litigation.  It is therefore not entitled to work product protection.

7.      *Document no. 10*

This document is identified in Plaintiffs' privilege log as a form prepared by Continental

investigator Landers requesting release of evidence for in-office review.  It is dated March 7, 2002.

Plaintiffs contend that the physical location of evidence within Continental's office, the identities

of persons within Continental who reviewed the evidence, and the reasons they did so are aspects

of Continental's research that constitute work product.  (Docket no. 42 at 11).  The Court finds that

Defendant has carried its burdens and that this document was not made in anticipation of litigation

and would have been prepared independent of any anticipated litigation.  It is therefore also not

entitled to work product protection.

-9-

8.      *Document no. 11*

This document number covers two documents.  One is a "transmission verification report" that a fax machine generates and a "fax cover sheet" from Continental Enterprises' General Counsel Lacy to Continental Enterprises' outside counsel Jonathan Polack containing direction to Mr. Polack in the "additional remarks" section.  Plaintiffs claim both the attorney-client privilege and work product protection.  The documents are dated April 30, 2002.  Defendant argues that Plaintiffs have not shown that these documents are privileged communication and that even if they are, the privilege is one that Continental must assert instead of Plaintiffs and that any privilege has been waived by Continental revealing the documents to VW.

Plaintiffs have not addressed the fact that the attorney-client privilege is not theirs to assert. In addition, they have not explained why any attorney-client privilege that did exist was not waived when they, as a third party, came into possession of the documents.[3]  The burden is on Plaintiffs to show that the privilege exists and that it was not waived.  Plaintiffs have failed to carry their burden. The attorney-client privilege does not shield these documents from disclosure.

Moreover, there is no evidence to show that these documents were prepared after Plaintiffs had formed a belief that litigation was a real possibility.  Therefore, because Defendant has carried its burden and Plaintiffs have not, the Court also finds that these documents are not subject to work product protection.

9.      *Document nos. 17 and 20*

---

[3] Plaintiffs make arguments along these lines concerning the work product doctrine but not the attorney client privilege.  (Docket no. 27 at 10; docket no. 42 at 5-7).

-10-

These documents are flow charts depicting Continental Enterprises' research regarding the relationship of various entities involved with the allegedly infringing products. Document no. 17 is simply a copy of document no. 20 with a change in the "current as of" date. This first of these dates is in 2001 and the second in 2003. Plaintiffs claim that the documents are protected by the work product doctrine. The Court finds that Defendant has carried its burdens, and Plaintiffs have failed to establish that the documents were prepared in anticipation of litigation. This is the type of chart that Continental likely would prepare for any investigation it was undertaking. Plaintiffs have not shown that Continental prepared these charts after they formed a belief that litigation was a real possibility. These documents should therefore be disclosed.

### 10.    *Document nos. 1, 18*

These documents are "case activity logs" of Continental which show every action taken by Continental, including purchases made, research performed, phone calls received and made, and letters received and drafted, in its cases. Plaintiffs argue that they are protected by the work product doctrine. One log is for Defendant DK Publishing and the other is for the retail store Waterstone. The last entries in the logs were made when Continental's files were closed and the information sent to Volkswagon of America on May 29, 2003. This occurred more than two years before this action was filed. The Court finds that Defendant has met its burden and that Plaintiffs have not shown that these logs were prepared in anticipation of litigation. Accordingly, they are not protected by the work production doctrine.

### 11.    *Document no. 22*

This is a "product advertisement form" that Plaintiffs state characterizes the manner in which the product at issue infringes VW's rights and specifies the remedy to be demanded. The form does

not identify the product to which it refers and is not dated. The author of the form is not identified. Given the subject matter, it is likely that the form was created early on when Continental discovered the allegedly infringing product. Defendant has met its burden of showing relevancy and that it is not privileged. There is nothing to indicate that Plaintiffs had formed a belief that litigation was a real possibility when this form was created. Accordingly, the Court finds that it is not protected by the work product privilege.

### 12.   Document no. 23

This document is a "case reference sheet" containing column headings for "product," "upline," and "downline" that describes the product. It bears a September 2001 date. Plaintiffs claim the work product privilege because the form records fruits of Continental's research regarding the relationship between the various entities involved with the alleged infringement. This form was created early on in Continental's investigation. Defendant has met its burden of showing relevancy and non-privilege. However, Plaintiffs have not carried their burden of showing that the form was created after they had formed a belief that litigation was a real possibility. Therefore, this form is not entitled to work product protection.

### 13.   Document no. 24

This document is a "subject information sheet" providing details regarding how the allegedly infringing product was discovered by Continental and information on the alleged infringer. It is dated in August 2001. Again, this is clearly a document created very early in Continental's investigation. Plaintiffs claim that it is protected by the work product doctrine. Defendant has met its burdens of showing relevancy and non-privilege. Plaintiffs have failed to show that the form was created in anticipation of litigation. This document should therefore be disclosed.

-12-

C.    *Conclusion as to Defendant's Document Request 2 and Subpoena to Continental*
      *Request 2*

For these reasons, Defendant's Motion to Compel the production of document numbers 1-24 of Plaintiffs' privilege log will be granted.

## III.   Defendant's Document Requests 5-7, 14-16 and 20-22

Defendant also seeks documents related to the licensing and use of Plaintiffs' trademarks and automobiles by third parties. Plaintiffs object to these requests as being irrelevant, overly broad, and burdensome.

Defendants request numbers 5 and 6 seek all documents generated between 1998 to present concerning any third parties' "attempted, actual, intended, or denied permission, approval, agreement, or license" to use Plaintiffs' Trademarks (VW emblem, Beetle, and new Beetle) or to use visual depictions of Plaintiffs' automobiles in toys, games, advertising, books, printed matter, and audiovisual works (including movies and television). Request number 7 seeks all documents related to Plaintiffs' knowledge or awareness that a third party used a visual depiction of Plaintiffs' automobiles in or on the products at issue in Request number 6.

Defendant's Request numbers 14, 15 and 16 seek all documents generated between 1998 and the present which support Plaintiffs' contentions in their Amended Complaint that they have licensed others, including several of Defendant's competitors, to use the new Beetle trade dress on products such as toy cars and books, including Mattel's new Beetle toy car for Barbie and new Beetle Hot Wheels toy car and a children's book produced by Matchbox entitled "Wash Me," which includes a toy New Beetle.

-13-

Finally, Defendant's Request numbers 20, 21 and 22 ask for all documents, without any time limitation, that relate to statements made by Plaintiffs in a responsive pleading, including: (1) all requests to permit or approve "news-reporting or encyclopedic displays of VW cars" as well as Plaintiffs' decision to grant or deny those requests; (2) "numerous requests to provide new-model vehicles to be photographed by various media and book publishers;" and (3) any publisher's use or intended use of "photographs of VW's vehicles" for "encyclopedic-type books depicting VW's cars among others."

### A.    Governing Law

Under Fed. R. Civ. P. 26(b)(1) a party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Relevant evidence need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. (*Id*.)  The Court may protect a party from annoyance, embarrassment, oppression, or undue burden or expense during the discovery process.  Fed. R. Civ. P. 26(c).

### B.    Application of the Law

#### 1.    Relevancy of the Documents to Defendant's Defenses

Plaintiffs' primary argument is that the requested documents concerning the persons or entities that VW did or did not license or authorize to use its marks or images of its automobiles are not relevant to Defendant's defenses of laches and acquiescence.  Plaintiffs objected on relevancy grounds to requests 5-7 and 20-22.  (Docket no. 24, ex. 5).  Plaintiffs rely on *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991).  In that case the Sixth Circuit found that a "plaintiff's failure to assert trademark rights against third parties is not relevant to the defenses of laches or acquiescence."  (*Id*.)  In that case, as in this case, there is no claim of an "abandonment"

-14-

of the trademark.  The *Elvis Presley* court held that the district court's limitation of discovery on this

issue was not an abuse of discretion.  Defendant has not attempted to distinguish *Elvis Presley* from

this action.  The rationale behind the conclusion that Plaintiffs' interaction with third parties is

irrelevant is that these defenses are personal defenses.  In order for laches or acquiescence to be

established, Defendant must rely on the interaction between it and Plaintiff and not a third party.

Therefore, based on these defenses Defendant has no right to obtain the discovery requested.

The requested documents are also not relevant to Defendant's defenses of fair use and the

First Amendment.  These defenses depend upon the nature of the infringer's product and the manner

in which that product is used by Defendant.  Consequently, no relevant evidence applicable to these

defenses can be obtained from Plaintiffs' third-party licensing decisions.

2.    *Relevancy of the Documents to Plaintiffs' Substantive Claims*

Plaintiffs acknowledge that to establish liability they must show that DK's alleged

infringement of a registered mark was likely to cause confusion, or to cause mistake, or to deceive.

(Docket no. 42 at 15 n.6).  They also agree that similarity of the parties' products is one factor to be

considered in assessing the likelihood of confusion.  (*Id*. at 15).  Plaintiffs allege that there is a

vibrant market for licensing the use of the Volkswagon trademarks and that DK's products are likely

to confuse consumers who will not be able to distinguish between the licensed goods and DK's

allegedly unlicensed products. (Plaintiffs' Amended Complaint at ¶¶ 3, 28-30). Evidence pertaining

to these third parties who are licensed to use Plaintiffs' trademarks is relevant to the issue of whether

there is a "likelihood of confusion" by consumers.  However, the Court sees no relevance to

documents concerning those who sought but were denied licenses by Plaintiffs.  The likelihood of

confusion only arises if products were actually produced and made available to consumers.

-15-

### 3.    Overbroad and Burdensome

Plaintiffs objected to each of these requests on the basis that they were overbroad and burdensome. (Docket no. 24, ex. 5). With respect to requests 5-7, Defendant has agreed to narrow the categories of goods to include only books and audiovisual works, and to limit the category of "printed matter" to include only editorial uses in magazine. (Docket no. 41 at 9). These requests are also limited in time from 1998 to the present. (Docket no. 24, ex. 4 at 6). Plaintiffs object to the requests because they cover its marks other than the New Beetle trade dress at issue in this action. The Court agrees that the requests should be limited to the New Beetle trade dress. With these limitations, the requests 5-7 are not overly broad or burdensome.

Requests 14-16 are limited also in terms of the period of time and are limited to the New Beetle trade dress products. Plaintiffs allege that they have already produced a list of its New Beetle licensees and have agreed to produce the license agreement for a book entitled "Wash Me" and the license agreement for a toy car for Barbie. Their burdensome argument is simply that the requests involve a large number of documents in Germany. (Docket no. 42 at 18). The Court finds that Plaintiffs have not shown that requests 14-16 are overbroad or burdensome.

Requests 20-22 are not limited in time as are the previous requests. They are also not limited to the New Beetle trade dress. The Court agrees that these limitations should be imposed to prevent these requests from being overbroad and burdensome.

### C.    Conclusion as to Defendant's Document Requests 5-7, 14-16 and 20-22

Defendant's Motion to Compel Plaintiffs to respond to these document requests is granted with the following limitations. Requests 14-16 shall be responded to as written. Requests 5-7 are limited to documents concerning licensees granted permission to use the New Beetle trade dress and

the category of goods includes only books and audiovisual works, and the category of "printed matter" includes only editorial uses in magazines. Requests 20-22 are limited to the time period 1998 to the present and are also limited to agreements to permit or approve concerning the New Beetle trade dress.

## IV.    Defendant's Request for Sanctions

Defendant has also moved for sanctions in its Motion to Compel. The Court, in its discretion, concludes that sanctions are not warranted against Plaintiffs. Accordingly, Defendant's request for sanctions is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (docket no. 24) is **GRANTED** as to document numbers 1-24 of Plaintiffs' privilege log of June 16, 2006, and as to Defendant's Document Requests 14-16.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel (docket no. 24) is **GRANTED IN PART** as to Defendant's Document Requests 5-7 and 20-22 as set forth in the body of this Order.

**IT IS FURTHER ORDERED** that Defendant's request for sanctions is **DENIED.**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).


Dated: January 22, 2007                     s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

   I hereby certify that a copy of this Opinion and Order was served upon Counsel of Record on this date.

Dated: January 22, 2007       <u>s/ Lisa C. Bartlett        </u>
                 Courtroom Deputy