**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VOLKSWAGEN AG, a German
Corporation, and VOLKSWAGEN OF
AMERICA, INC., a New Jersey corporation,

                Case No. 05-72654

          Plaintiffs,

                Hon: Denise Page Hood

vs.

DORLING KINDERSLEY PUBLISHING,
INC., a Delaware corporation,

          Defendant.

---

Edward C. Cutlip (P35836)
ecc@krwlaw.com
**KERR, RUSSELL AND WEBER, PLC**
Attorneys for Plaintiffs
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200

Jill M. Wheaton (P49921)
jwheaton@dykema.com
K.J. Miller (P62014)
kmiller@dykema.com
**DYKEMA GOSSETT PLLC**
Attorneys for Defendant
2723 South State Street, Suite 400
Ann Arbor, MI  48104
(734) 214-7629

---

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ ii

Preliminary Statement .....................................................................................................1

Facts ...................................................................................................................................2

     A.   *Fun Cars* ...........................................................................................................2

     B.   *On the Road* ....................................................................................................3

     C.   VW Provides Cars for DK to Photograph and Grants Permission to Use the Images ......................................................................................................4

     D.   Use of New Beetles in Third-Party Books ....................................................6

     E.   VW's Unreasonable Delay in Bringing Suit .................................................6

Argument ...........................................................................................................................7

    I.   DK Is Not Using Any of VW's Marks as Trademarks. ....................................8

    II.   DK's Use of VW's Marks Is Protected by the First Amendment .....................10

     A.   DK's Use of the VW Marks is "Relevant" to  the Expressive Content of *Fun Cars* and *On the Road*. ....................................................................11

     B.   VW Cannot Overcome DK's First Amendment Defense. ...........................13

    III.   DK's Use of the Marks Is a Nominative Fair Use. ..........................................14

    IV.   VW's Marks Are Not Diluted by DK. ...............................................................16

     A.   DK's Use Is "Noncommercial." .....................................................................16

     B.   DK's Use Does Not Tarnish or Blur VW's Marks. .......................................17

    V.   VW Has No Valid "Counterfeiting" Claim .....................................................18

    VI.   VW's Claims Are Barred by Laches and Estoppel ............................................18

     A.   VW's Damages Claims Are Barred by Laches. .............................................18

     B.   VW's Request for Injunctive Relief Is Barred by Estoppel. .........................19

Conclusion ........................................................................................................................20

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

i

## TABLE OF AUTHORITIES

### CASES

American Family Life Insurance Co. v. Hagan,
    266 F. Supp. 2d 682 (N.D. Ohio 2002)............................................................17

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..................................................................................8

Bery v. City of New York,
    97 F.3d 689 (2d Cir. 1996)........................................................................10

Cairns v. Franklin Mint Co.,
    292 F.3d 1139 (9th Cir. 2002) ...................................................................15

Century 21 Real Estate Corp. v. Lendingtree, Inc.,
    425 F.3d 211 (3d Cir. 2005).......................................................................14

Comins v. Discovery Communications, Inc.,
    200 F. Supp. 2d 512 (D. Md. 2002).............................................................13

Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.,
    125 F.3d 28 (2d Cir. 1997)..........................................................................9

Dan-Foam A/S v. Brand Named Beds, LLC,
    No. 06 Civ. 6350, 2007 WL. 1346609 (S.D.N.Y. May 4, 2007)....................16

ETW Corp. v. Jireh Publishing, Inc.,
    332 F.3d 915 (6th Cir. 2003) ..........................................................8, 11, 13, 14

Faber v. FJH Music Co.,
    No. 06-12669, 2007 WL. 1098259 (E.D. Mich. Apr. 11, 2007) ......................7

Ford Motor Co. v. Greatdomains.Com, Inc.,
    177 F. Supp. 2d 635 (E.D. Mich. 2001).................................................17, 18

In re Frederick Warne & Co.,
    218 U.S.P.Q. 345 (BNA) (T.T.A.B. 1983) .......................................................9

Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,
    670 F.2d 642 (6th Cir. 1982) .......................................................................11

General Motors Corp. v. Lanard Toys, Inc.,
    468 F.3d 405 (6th Cir. 2006) .......................................................................14

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,
    423 F.3d 539 (6th Cir 2005) ...............................................................8

Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,
    270 F.3d 298 (6th Cir. 2001) ...........................................................19

Hicks v. Casablanca Records,
    464 F. Supp. 426 (S.D.N.Y. 1978) ...................................................11

Hurley v. Irish-American Gay, Lesbian & Bisexual Group,
    515 U.S. 557 (1995)...........................................................................10

E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,
    444 F. Supp. 2d 1012 (C.D. Cal. 2006) ...........................................12

Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.,
    326 F.3d 687 (6th Cir. 2003) .........................................................8, 9

K'Arsan Corp. v. Christian Dior Perfumes, Inc.,
    166 F.3d 1214 (6th Cir. 1998) .........................................................16

King v. Innovation Books,
    976 F.2d 824 (2d Cir. 1992)..............................................................13

L.L. Bean, Inc. v. Drake Publishers, Inc.,
    811 F.2d 26 (1st Cir. 1987)................................................................10

Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,
    452 F. Supp. 2d 772 (W.D. Mich. 2006) ............................................8

Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,
    464 F. Supp. 2d 495 (E.D. Va. 2006) ...............................................16

Mattel, Inc. v. MCA Records,
    296 F.3d 894 (9th Cir. 2002) ...........................................................17

Mattel, Inc. v. Walking Mountain Products,
    353 F.3d 792 (9th Cir. 2003) ...........................................................15

N.Y. Racing Ass'n v. Perlmutter Publishing, Inc.,
    959 F. Supp. 578 (N.D.N.Y. 1997)...................................................12

Nartron Corp. v. STMicroelectronics, Inc.,
    305 F.3d 397 (6th Cir. 2002) ...........................................................19

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

New Kids on the Block v. News America Publishing, Inc.,
    971 F.2d 302 (9th Cir. 1992) ..............................................................14, 15, 16

Pirone v. MacMillan, Inc.,
    894 F.2d 579 (2d Cir 1990).........................................................................9, 10

Regan v. Time, Inc.,
    468 U.S. 641 (1984).......................................................................................11

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989)..............................................................11, 12, 14

Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.,
    786 F. Supp. 1287 (N.D. Ohio 1991)...............................................................7

In re Scholastic, Inc.,
    223 U.S.P.Q. (BNA) 431 (T.T.A.B. 1984) ......................................................9

Shonac Corp. v. AMKO Int'l, Inc.,
    763 F. Supp. 919 (S.D. Ohio 1991) ................................................................7

Twin Peaks Products, Inc. v. Publications Int'l, Ltd.,
    996 F.2d 1366 (2d Cir. 1993)........................................................................13

U.S. Structures, Inc. v. JP Structures, Inc.,
    130 F.3d 1185 (6th Cir. 1997) ......................................................................18

Warner Brothers Inc. v. American Broadcasting Cos.,
    720 F.2d 231 (2d Cir. 1983)..........................................................................14

Whirlpool Prop., Inc. v. LG Electronics U.S.A., Inc.,
    No. 1:03-CV-414, 2005 WL. 3088339 (W.D. Mich. Nov. 17, 2005) .............14

Yankee Publishing Inc. v. News America Publishing Inc.,
    809 F. Supp. 267 (S.D.N.Y. 1992) ...............................................................12

## STATUTES AND LEGISLATIVE MATERIALS

15 U.S.C. § 1116(d)(1) .......................................................................................18

15 U.S.C. § 1114................................................................................................7

15 U.S.C. § 1125(a) ...........................................................................................7

15 U.S.C. § 1125(c)(3).................................................................................14, 17

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

141 Cong. Rec. H14317-01 (daily ed. Dec. 12, 1995)...........................................17

141 Cong. Rec. S19306-10 (daily ed. Dec. 29, 1995) ...........................................17

Fed. R. Civ. P. 56(c) ..............................................................................................8

Trademark Dilution Revision Act of 2006, 109 Pub. L. No. 312, 120 Stat. 1730.................................................................................................................14

## OTHER AUTHORITIES

RESTATEMENT (THIRD) OF UNFAIR COMPETITION, §20 (1990) ...............................9

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

## PRELIMINARY STATEMENT

Defendant Dorling Kindersley Publishing, Inc. ("DK"), known worldwide to adults and children through its popular EYEWITNESS books, publishes highly illustrated books, primarily non-fiction, that are distinguished by the use of color photos of real objects, natural and man-made, laid out on a white background and surrounded by text appropriate to the age of the target reader.

In 1999 and 2001, DK published a children's book containing photographs of a New Beetle car (the "New Beetle") taken by DK with permission from Volkswagen, which collects and identifies several "fun" cars.  In 2000, DK published another book that depicts a family outing in which the family drives to a picnic in a car that happens to be a New Beetle.  Plaintiffs (together, "VW") allege that these quintessentially expressive uses, simply by reproducing an image of the actual New Beetle car, violate the VW trademark and trade dress rights embodied in that image.  VW's claims fundamentally misconstrue the purpose of trademark and trade dress law, ignore DK's First Amendment rights, and should be rejected as a matter of law.

The nature of DK's use of VW's marks—to identify a VW product in a book—gives rise to three separate defenses applicable to all of VW's claims.  First, because the marks are not being used to indicate the source of the books, DK's use is a non-trademark use, outside the purview of the Lanham Act.  Second, because DK's use of VW's marks is relevant to DK's expressive works (the books) and does not explicitly mislead the reader about the source of the books, it is protected by the First Amendment.  Lastly, because DK uses the VW marks and trade dress only to identify the New Beetle in a fashion comprehensible for the intended young readers, and does not in any way suggest that VW sponsored the books, the use is a nominative fair use.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

Aside from these defenses, VW cannot make out even a *prima facie* case for dilution. DK's use of VW's marks is non-commercial—that is, the books as expressive works do more than propose a commercial transaction. And VW can present no evidence of tarnishment or blurring.

Finally, the doctrines of laches and estoppel should preclude VW from obtaining either damages or injunctive relief. VW's over-four-year delay in bringing this suit after it was aware of the operative facts is a classic example of laches, for which VW has no good explanation. Furthermore, because VW assisted DK in the creation of the books and approved of DK's uses of the photos of the New Beetle, it is now estopped from seeking injunctive relief.

In considering VW's claims, the Court should stand back to regard the consequences of sustaining any of VW's contentions. To expose authors and publishers to liability (or even trial) merely for using genuine images of actual trademarked products in their works would create an intolerable chilling effect on free expression. Indeed, that is the very reason why courts apply the defenses raised by DK and why this Court should grant DK summary judgment dismissing all of VW's claims.

## FACTS

### A.     *Fun Cars*

DK first published *Fun Cars* in 1999. *See* Ex. A. It is a part of a series of books DK refers to as "wheelies," which are books about different kinds of vehicles, including *Racing Car* (with a Porsche on the cover) and *Motorcycle* (with a Harley Davidson on the cover). *See* Exs. B-D. The wheelies books, which are geared to children aged 3-5, have certain features in common: each contains photographic images of various types of vehicles on a white background, with minimal text describing each vehicle; each features a single vehicle on the cover that is also on the inside; each is made of rigid "board" pages to enable it to be handled

2

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

easily by small children, and each has plastic spinning wheels affixed to the bottom of the book's covers.[1]  These books are part of a larger category of books produced by DK that use features such as shape, color, textures, and sounds that young children are capable of perceiving in order to attract them to books and to reading.  Publishers have offered wheeled, shaped books since at least 1930.  Examples of various shaped and wheeled children's books may be found at Exhibits E-K.

*Fun Cars* is about cars that are "fun"—brightly colored cars, interestingly shaped cars, and cars with unusual features, such as the DeLorean car with butterfly doors.  It features an image of a blue New Beetle on the cover, and is shaped roughly in the form of a car's profile. (The actual shape of the book, devoid of the New Beetle image, does not even remotely resemble the New Beetle, and is far closer to the shape of other cars, as shown in Exhibit L.)  The same New Beetle image is present in the interior of the book.  Because the image on the cover and inside the book are photographs, the VW logo, which consists of the letters "V" and "W" inside a circle, is barely visible on the window of the car depicted in the cover photo and on the hubcaps of the car in the inside photo, exactly where they appear on the genuine car.

**B.**   ***On the Road***

*On the Road*, first published by DK in 2001, was withdrawn from publication due to a product recall in 2003.[2]  *On the Road* is a board book that contains a simple narrative, illustrated

---

[1]     Two of the wheelie books produced by DK are under license to and created at the request of specific companies:  a book about John Deere tractors which was produced under an agreement with a book packager, and a book about "Monster Trucks," which was produced under an agreement with Clear Channel Entertainment.  Due to the circumstances of their creation, these books have noticeable editorial differences from the non-licensed "wheelies."  In particular, they contain only John Deere and Clear Channel vehicles in contrast to the other wheelies books, which contain cars by a variety of manufacturers; they do not use DK's trademark style of color images on a white ground; and they prominently and solely feature the trademarks of John Deere and the Clear Channel cars.

[2]     *On the Road* was one of a series of books featuring noisemaker units.  The entire series was recalled in 2002 because a child had taken apart the noisemaker unit, which presented a theoretical choking hazard (no reports were ever made of a child being harmed by any of the books).  All books in

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

with photographs, of a family going on a picnic in their car, which happens to be a yellow New Beetle.  *See* Ex. N.  The front cover features a photograph of the car, and is squared at the bottom and spine, while the top edge roughly follows the curve of the roof of the car.  The book contains a button that makes a "beeping" noise when pressed.  Like the wheels on the wheelies books, the "horn" on *On the Road* is meant to entice young readers to pick up and read the book.  The VW logo is visible in some images, appearing exactly where it appears on the actual New Beetle car, the hood, and the center of the wheels.

### C.    VW Provides Cars for DK to Photograph and Grants Permission to Use the Images

In approximately 1998, at DK's request, VW provided a New Beetle to be photographed by DK for use in a book entitled the *Big Book of Cars*.  Ex. O, Combe Tr. at 37-38; Ex. P, Buckett Tr. at 22.  *Big Book of Cars* is an encyclopedic book about cars for older children.  Like *Fun Cars*, it features images and text describing different types of cars.  The car was photographed and the resulting photos were used on the spine, back cover, title page, table of contents page, and an interior page about the car.  *See* Ex. Q.  VW has never complained to DK about the use of these photos in *Big Book of Cars*.

DK designer Mandy Earey attended the photo shoot and DK obtained a copy of a standard "copyright and commission" form signed by the VW representative.  Ex. O, Combe Tr. at 46-47, 49-50.  The form acknowledged that DK owned the copyright in the photos and gave permission for DK to re-use the images in future publications.[3]  *Id.* at 39-40.  Ms. Combe testified that it was standard practice to obtain such a form, because photo shoots are expensive

---

the series, including *On the Road*, were recalled and pulped. The recall cost DK approximately $35,000. *On the Road* has never been reprinted and DK has no plans to reprint the book in any form. Ex. M, Sutinis Tr. at 63.

[3]        The form has unfortunately been lost in the six years between the publication of *Big Book of Cars* and the date on which VW brought suit against DK.  In that time, DK was acquired by another publisher and its offices were moved.  Ex. O, Combe at 41.

4

and the cost can be justified only if DK is able to reuse the photos it takes.  *Id.* at 44-45.  One of

the photographs taken for *Big Book of Cars*—a profile image of the New Beetle automobile—

was used in 1999 on the cover and on an interior page in *Fun Cars*.[4]

The acknowledgment section of *Big Book of Cars* included a thank-you to VW for

providing a vehicle to be photographed.[5]  *See* Ex. Q.  DK also thanked other entities that

provided cars.  *Id*.  VW has never complained that the acknowledgment is inappropriate or

infringes its rights.  *See* Ex. R, Thompson Tr. at 49; Ex. P, Buckett Tr. at 26-27.  The same

thank-you to VW was included in *Fun Cars* and appears along with a thank-you to the N. Wright

National Motor Museum, which also provided cars to be photographed for the book.

In 2000, DK editor Nicola Deschamps requested that VW provide a car to be

photographed for *On the Road*.  Ms. Deschamps told VW that the book would be about a family

that takes a ride in their car, and provided a story outline to VW.  Ex. S, Deschamps Tr. at 18-19.

VW agreed to provide a car, and Ms. Deschamps arranged for a photo shoot to take place at

QEK Global Solutions, a VW agent.

In April 2002, Ms. Deschamps requested permission from VW to re-use the photos that

were taken for the *On the Road* in future publications.  Ex. T.  VW responded that it had "no

objections" to DK's re-using the photographs, stating "they are your photos, *you can use them*

*however you want*."  *Id*. (emphasis added).  VW did not ask that DK check back to obtain

approval for use of the photographs or to advise VW of the nature of the planned use.  At the

same time, Ms. Deschamps informed VW that a "credit" would appear on the imprint page of the

---

[4]     The color of the car was changed using editing software.  Ex. O, Combe Tr. at 38.
[5]     Many, if not most, of the images in DK's books are taken from DK's large library of photos or
purchased from stock photograph agencies.  However, because the New Beetle had just been launched at
the time Big Book of Cars was being created, it was necessary for DK to obtain an actual car to be
photographed for the book.  Ex. O, Combe Tr. at 33-35.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

book thanking VW for providing the car for photography.  *Id*.  VW did not object to the inclusion of that credit.

VW's cooperation with DK is entirely in line with its policy of granting permission (and making vehicles available for photography) as a matter of course for editorial uses of images of VW vehicles in publications such as books.  Ex. P, Buckett Tr. at 12, 14-15 (stating that, to his knowledge, VW has never denied requests for assistance with respect to books from publishing houses, including children's books); Ex. R, Thompson Tr. at 14-18.

**D.  Use of New Beetles in Third-Party Books**

DK is not the only publisher to use images of the New Beetle editorially in children's books.  Indeed, DK has located four children's books published by third-parties that picture the New Beetle.  *See* Exs. U-X.  No VW witnesses were aware of any sort of license from VW to make these books.  *See* Ex. Y, Kingsbury Tr. at 57-58, Ex. P, Buckett Tr. at 34, Ex. Z, Scipione Tr. at 65-66, Ex. R, Thompson Tr. at 59-60.  Apparently recognizing the legality of including of images of the New Beetle in these books, VW has not complained or sued the publishers of these books.  And there are countless other books in existence picturing VW's cars about which VW has never complained.  *See* Ex. AA (listing 21 titles).

**E.  VW's Unreasonable Delay in Bringing Suit**

*Fun Cars* was first published in 1999 and *On the Road* was first published in 2001.  VW first contacted DK about these books, among others, in June 2001, sending a letter to a defunct DK subsidiary.[6]  See Ex. BB.  In 2002, VW resent the letter and DK responded promptly, sending a lengthy response in April 2002 that explained why DK's conduct was lawful.  Ex. CC. VW did not respond to DK's 2002 letter.  In 2004, VW sent another letter making the same

---

[6]  VW's first letter, which was sent by an investigations firm, Continental Enterprises, complained about *Fun Cars* and another DK book entitled *The Ultimate Car Sticker Book*, which also included photos of the New Beetle.  VW has dropped its claims concerning *The Ultimate Car Sticker Book*.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

complaints about *Fun Cars* that it made in 2002.  Ex. DD.  That letter did not acknowledge DK's

2002 letter.  DK assumed this was an example of an administrative oversight and rested on its

prior response.  *See* Ex. EE, Gigante Tr. at 13.  In July 2005, over four years after VW

indisputably had knowledge of both books at issue, VW initiated this lawsuit.

## **ARGUMENT**

VW's amended complaint states four causes of action:  (1) trademark infringement under

§ 32 the Lanham Act, 15 U.S.C. § 1114; (2) trade dress infringement under § 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a); (3) federal trademark and trade dress dilution, and (4)

common law trademark infringement.[7]  While VW does not state a separate cause of action for

use of a counterfeit mark, it does make repeated allegations suggesting counterfeiting and

requests certain damages based on a finding of counterfeiting.

None of the marks or trade dress asserted by VW are registered for the use DK has made,

and accordingly VW has failed to state a claim under § 32 of the Lanham Act.[8]  It also bears

noting that Plaintiff Volkswagen of America, Inc. lacks standing with respect to the § 32 claim

because it is not the owner of any of the registered trademarks or trade dress at issue in the case.

*See Shonac Corp. v. AMKO Int'l, Inc.*, 763 F. Supp. 919 (S.D. Ohio 1991).

---

[7]     The Lanham Act trademark and trade dress infringement claims and the common law trademark
claim all require the same basic analysis.  *See Faber v. FJH Music Co.*, No. 06-12669, 2007 WL
1098259, at *10-11 (E.D. Mich. Apr. 11, 2007) (Hood, J.) (equating Michigan common law and Lanham
Act trademark analysis); *Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1299
(N.D. Ohio 1991) (equating Lanham Act trade dress and trademark analysis).
[8]     The asserted New Beetle trade dress mark, registration no. 2409675, is registered only for use
with actual automobiles.  Ex. FF.  The asserted VW logo trademark, registration no. 1883332, is not
registered for use with children's books, and VW has withdrawn its registration in the only related
category, coloring books.  *See* Ex. GG; Ex. HH, Decl. of Lorri Emanu ¶¶ 3-4.  And VW has surrendered
the other design mark that was cited and emphasized in its original complaint in this case.  Ex. I I.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

Under the familiar summary-judgment standard,[9] all of VW's claims must fail for three independent, but related reasons:  (1) DK is not using VW's trademarks or trade dress in a source-identifying way that implicates trademark law, (2) the First Amendment protects DK's expressive works, and (3) the doctrine of nominative fair use shields DK's conduct.  VW's dilution claim also fails as a matter of law because DK's use is non-commercial, and VW has no evidence that DK's use tarnishes or blurs VW's marks.  VW's counterfeiting allegations are baseless, as the marks used by DK are genuine marks that actually appear on the genuine New Beetle in the photographs.  Finally, aside from their legal deficiencies, the uncontested facts establish that all of VW's claims are barred by laches and estoppel.

## I.   DK IS NOT USING ANY OF VW'S MARKS AS TRADEMARKS.

Trademarks exist and are protected only to the extent that they are used in commerce "to identify and distinguish [one's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods."  *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir 2005).  If a defendant only "us[es] [a] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply."  *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003).

---

[9]   Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party opposing summary judgment must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Summary judgment is appropriate in a trademark case where a plaintiff fails to demonstrate sufficient evidence of the "ultimate question"—whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.  *See, e.g.*, *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772 (W.D. Mich. 2006) (granting summary judgment for the defendant despite plaintiff's consumer survey purporting to demonstrate actual confusion).  Summary judgment is also appropriate where a defendant has a valid First Amendment defense.  *See, e.g.*, *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

Accordingly, in order to prevail in a trademark action, "it is clear that a plaintiff must show that . . . the defendant has . . . used [plaintiff's mark] or a similar designation *as a trademark*." *Id.* (emphasis added). "[I]f the use merely causes prospective purchasers to recognize the mark as a reference to the trademark owner, it is not an infringement." RESTATEMENT (THIRD) OF UNFAIR COMPETITION, §20 Comment b (1990).

In *Pirone v. MacMillan, Inc*., 894 F.2d 579 (2d Cir 1990), plaintiff claimed that defendant's product, a calendar containing photographs of Babe Ruth, including on the calendar's cover, infringed the plaintiff's rights in Ruth's name and likeness. The court rejected the claim, recognizing that, whatever rights plaintiff may have had in the image of Babe Ruth, the photographs of Ruth appearing both on the cover and in the calendar were not actionable because they did not serve a source-indicating function. 894 F.2d at 584. Instead, "the calendar uses the name and image of Babe Ruth in the primary sense—*to identify a great baseball player enshrined in the history of the game*. Such use is not a trademark use and not an infringement." *Id.* (emphasis added). The court found that the non-trademark use was solidified by the presence of the publisher's name on the work as well as the presence of pictures of other famous baseball players in the calendar. *Id.*; *see also Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co*., 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the *prominent display of the defendants' own trademarks*.") (emphasis added). The court also noted parenthetically that book titles and cover images are not source-identifying. *Pirone*, 894 F.2d at 584 (citing *In re Scholastic, Inc.*, 223 U.S.P.Q. (BNA) 431 (T.T.A.B. 1984) and *In re Frederick Warne & Co.*, 218 U.S.P.Q. 345 (BNA) (T.T.A.B. 1983)).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

9

As in *Pirone*, the photographs of the New Beetle appearing in and on the covers of *Fun Cars* and *On the Road* are not intended to and do not indicate the source of the books.  They are being used precisely as the images of Babe Ruth in the calendar were used—editorially, to identify a car that is being discussed in the books.  Like the calendar in *Pirone*, *Fun Cars* bears the DK trademark on the spine and back of the book to indicate the source of the book; and the spine and the pages of the book include pictures of nearly a dozen different, non-VW cars, including the distinctive and well-known DeLorean.

Because DK's use of VW's marks and trade dress in *Fun Cars* and *On the Road* is not a trademark use, DK is entitled to summary judgment on all of VW's trademark claims.

## II.   DK'S USE OF VW'S MARKS IS PROTECTED BY THE FIRST AMENDMENT.

The First Amendment protects expressive works from claims of trademark and trade dress infringement.  "Trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view."  *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987).  *Fun Cars* and *On the Road* are books, which are unquestionably "expressive works."[10]  Books containing predominantly visual, as opposed to verbal, content are no less deserving of the protection of the First Amendment.[11]

---

[10]     VW has asserted that *Fun Cars* and *On the Road* are "toys," apparently because *Fun Cars* has wheels and is in the rough shape of a car, while *On the Road* has a noisemaker.  But shapes, wheels, and elements like noisemakers are common features of books for children.  *See* Exs. E-K.  *Fun Cars* and *On the Road* are unquestionably books.  They have pages, text, and a spine.  They contain editorial content—*Fun Cars* is about various kinds of cars, while *On the Road* contains a story of a family on a picnic.  Moreover, they are sold only in bookstores or dedicated book departments of general merchandise and toy stores.  Ex. M, Sutinis Tr. at 20-21.

[11]     *See Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557, 569 (1995) ("[T]he Constitution looks beyond written or spoken words as mediums of expression. . . .  [A] narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll.") (citation omitted); *Bery v. City of New York*, 97 F.3d 689, 695 (2d Cir. 1996) ("Visual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection."); *see also Regan v. Time, Inc.*, 468 U.S. 641, 678 (1984) (Brennan, J., concurring in part and dissenting in part) ("The adage that 'one picture is worth a thousand words'

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

The Sixth Circuit has adopted the test from *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989), to determine whether First Amendment rights trump trademark rights with respect to expressive works.  *ETW Corp.*, 332 F.3d at 937.  Under the *Rogers* test, a mark used in an accused expressive work is subject to Lanham Act liability only if it has "no artistic relevance" to the underlying work or, if there is artistic relevance, the title or work "explicitly misleads as to the source or the content of the work."  *Id.* at 1001.  The Sixth Circuit has made clear that the *Rogers* test itself strikes the proper balance between the First Amendment and any likelihood of confusion, and therefore the analysis of the factors from *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), is unnecessary when a defendant satisfies the *Rogers* test.  *See ETW Corp.*, 332 F.3d at 928 n.12, 937.

In *ETW Corp.*, the Sixth Circuit considered claims of trademark infringement against a publisher who sold prints of an artist's painting that depicted golfer Tiger Woods, in whose name and likeness plaintiff claimed trademark and publicity rights.  The court applied the *Rogers* test, and concluded that because the images of Mr. Woods had "artistic relevance" to the work as a whole—they were an important expressive element of the work, which depicted scenes from a national golf tournament—and did not "explicitly mislead" as to the source of the work, the work was protected by the First Amendment against plaintiff's trademark claims.  332 F.3d at 937.[12]

A.    **DK's Use of the VW Marks is "Relevant" to the Expressive Content of *Fun Cars* and *On the Road*.**

Under the *Rogers* test, the use of the disputed marks in an expressive work is protected if it is "relevant" to the content of the work.  Courts have found this factor satisfied where a mark is

---

reflects the common-sense understanding that illustrations are an extremely important form of expression for which there is no genuine substitute.").

[12]    As is plain from *Rogers v. Grimaldi*, even where a reference is "fictionalized," courts find the First Amendment trumps Lanham Act claims where the use of the trademark is necessary to the work's artistic expression.  *See e.g., Hicks v. Casablanca Records*, 464 F.Supp. 426, 431-33 (S.D.N.Y. 1978) (protection under First Amendment for fictionalized movie about Agatha Christie).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

relevant to the theme, story, or artistic design of a work.  *See, e.g.*, *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1041 (C.D. Cal. 2006) (theme and artistic design); *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 278 (S.D.N.Y. 1992) (theme); *Rogers*, 875 F.2d at 1001 (story).

DK's use of images of the New Beetle is relevant to theme, story, and artistic design of the two books in which the images are used.  *Fun Cars* is an encyclopedic book for children about many different cars that are "fun."  Just as in an adult encyclopedia or a book such as *Big Book of Cars* intended for older children, it is necessary for DK to include photographs of cars in order to effectively communicate the book's message—that is, to depict the kinds of cars that are the subjects of the books.  Because *Fun Cars* is aimed at an age group that includes non-readers, images are required to describe the cars being discussed.  Such a use is clearly expressive and is relevant to the expressive content and theme of the books.  Likewise, the car in *On the Road* is relevant to the story about a family car trip to a picnic.

The depiction of the VW logo mark in DK's books is "relevant" to the works as a whole because it serves the purpose of providing a realistic, accurate depiction of a VW car, which bears those marks.[13]  *See N.Y. Racing Ass'n v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997) (holding that the defendant's depiction of the plaintiff's marks in paintings that depicted geographical scenes in which the marks actually appeared "serve[d] an artistically relevant purpose  . . . (realism)").

---

[13]     In fact, VW witnesses testified that it would be *improper* for a third party using photographs of VW automobiles to remove the logo (using a photo editing program or by a similar means) from the positions in which those logos appear on the genuine cars.  *See* Ex. Z, Scipione Tr. at 50; Ex. R, Thompson Tr. at 54.

12

**B.    VW Cannot Overcome DK's First Amendment Defense.**

In order to overcome DK's First Amendment defense, VW must show that the works at issue "explicitly mislead" as to their source.  But both books at issue prominently display DK's mark on their spines and back covers (and *On the Road* shows DK's mark on the front cover as well).  While VW may contend that the "thank-you" to VW in the fine print on the back cover of the book creates the impression that VW sponsored the book, that contention is unreasonable.  *See ETW Corp.*, 332 F.3d at 937 (explaining that some members of the public might draw an "incorrect inference" of sponsorship, but this does not create a fact issue precluding summary judgment).  Indeed, expressive works, such as books, routinely contain acknowledgements to individuals and entities that are not their source or sponsor.  Ex. U.[14]  DK's thank-you to VW referred to VW's provision of the New Beetle that was photographed for the books; it was the same acknowledgement DK used without objection from VW in previous books containing images of the New Beetle.

Accordingly, the Court should grant summary judgment in favor of DK because its conduct is protected by the First Amendment.[15]

---

[14]    *See, e.g.*, *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp. 2d 512, 522-23 (D. Md. 2002) (rejecting Lanham Act false endorsement claim premised on plaintiff's argument that "by extending a textual 'thank you' to him in the credits at [a television program's] conclusion, Defendants falsely implied that [plaintiff] 'was involved in, and had expressed his approval for, the television program,' in a manner 'intended to exploit the value of [his] name and reputation in connection with the marketing of the television program'"); *cf. King v. Innovation Books*, 976 F.2d 824 (2d Cir. 1992) (contrasting "possessory credit," such as "Stephen King's The Lawnmower Man" with "based upon credit," such as "The Lawnmower Man, based upon a short story by Stephen King," and explaining that only the former suggests that the credited party "had some involvement in, and/or gave approval to" the crediting party).

[15]    Even if the likelihood of confusion analysis were applicable, VW has not established the "particularly compelling" evidence of confusion required outside of the Sixth Circuit in order to overcome the First Amendment defense.  *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993).  Assuming the Court accepted VW's flawed survey evidence that 29% of people were confused about the source or sponsorship of the *Fun Cars* book, this would not establish likelihood of confusion sufficient to overcome a First Amendment defense.  Indeed, the *ETW Corp.* court found a survey showing far more alleged confusion—67%—to be insufficient to create an issue of fact in this context.  332 F.3d at 937; *see also Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 246 (2d Cir. 1983) (affirming summary judgment for defendant on Lanham Act claim notwithstanding survey showing

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

## III.   DK'S USE OF THE MARKS IS A NOMINATIVE FAIR USE.

A nominative fair use of a trade mark or trade dress involves use of a plaintiff's mark to refer to plaintiff's products or services, rather than the defendant's.[16] *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  A use (even if confusing)[17] is protected as a nominative fair use if:  (1) the plaintiff's product or service in question is not readily identifiable without use of the trademark; (2) only so much of the mark or marks is used as is reasonably necessary to identify the plaintiff's product or service; and (3) the user does not, in connection with the mark, suggest sponsorship or endorsement by the trademark holder. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1153-55 (9th Cir. 2002).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

---

33% confusion); *Rogers*, 875 F.2d at 1001 & n. 8 (finding no issue of fact notwithstanding survey showing 14% confusion).  Moreover, the survey here is fatally flawed for the reasons discussed in the report of Dr. DuPont, Ex. JJ.  In fact, VW's own expert concedes that:  (a) he did not control for whether participants mistakenly believed that permission is always required in order to use an entity's mark; (b) a high percentage of people hold this mistaken assumption; and (c) the vast majority of those purportedly shown to be confused by his survey were confused as to permission, rather than source or sponsorship.  Ex. KK, Christensen Depo. at 244-44, 259. And in the eight years since the publication of *Fun Cars* and six years since the publication of *On the Road*, VW has not presented even a single incident of consumer confusion with respect to either book.  This alone should be sufficient to defeat its claims.  *Whirlpool Prop., Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03-CV-414, 2005 WL 3088339, at *17 (W.D. Mich. Nov. 17, 2005).

A review of other relevant *Frisch's* factors further counsels against a finding of a likelihood of confusion here:  Strength of Plaintiff's Mark  VW's has no registered marks for children's books; and VW has never sold or licensed children's books bearing the VW marks.  Relatedness  The parties do not "compete directly"; DK does not make or market cars, and VW does not make or market children's books.  Similarity of Marks  The VW logo in the books is identical to the genuine logo, because the books depict the genuine car on which the logo is present.  But the trade dress of the New Beetle is not similar to the trade dress (the shape) of the book—the car is three dimensional, the books are not.  Channels of Trade  VW's and DK's products, cars and books, clearly do not move in the same channels of trade.  Intent in Using Mark  There is absolutely no evidence that DK acted in bad faith; rather, DK has demonstrated its good faith by prominently featuring its own mark on the back of book and the spine to identify DK as the source of the books.  Likelihood of Expansion  There is no evidence that VW intends to expand into making children's books.  *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006).

[16]  While the Sixth Circuit has not formally adopted the nominative fair use doctrine, it is more than likely that it will be adopted in light of Congress's explicit recognition of the doctrine in its 2006 amendments to the Lanham Act regarding dilution.  *See* Trademark Dilution Revision Act of 2006, 109 Pub. L. No. 312, 120 Stat. 1730; 15 U.S.C. § 1125(c)(3); note 18 *infra*.

[17]  The Third Circuit employs a two-step approach in nominative fair use cases:  "The plaintiff must first prove that confusion is likely due to the defendant's use of plaintiff's mark. . . .  Once plaintiff has met its burden of proving that confusion is likely, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair."  *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005).

14

Examples of nominative fair uses are:  the use of the name of a music artist to identify the artist in an unauthorized magazine poll, *New Kids on the Block*, 971 F.2d 302, and the use of Princess Diana's name and likeness to describe Princess Diana with respect to unauthorized Diana-related products, *Cairns,* 292 F.3d 1139.  Noteworthy is the *New Kids* court's remark that it is not "reasonably possible . . . to refer to . . . Volkswagens . . . without using the trademark." 971 F.2d at 308.

DK meets all of the *New Kids/Cairns* factors.  A New Beetle is not "readily identifiable" without using the name "New Beetle" and/or an image of the car.  The use of the word "New Beetle" and the photograph of the car are "reasonably necessary" in a photographic book about cars aimed at children with no or limited reading ability.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 812 (9th Cir. 2003) ("Barbie would not be readily identifiable in a photographic work without use of the Barbie likeness and figure.").  Nor does DK make any claims of sponsorship or authorization by VW on the books.  Indeed, the product clearly identifies DK, not VW, as the publisher and manufacturer of the book.  *See, e.g.*, *Cairns*, 292 F.3d at 1154-56 (finding no suggestion of sponsorship under third factor despite an assertion by Franklin Mint in their advertisements that all proceeds would go to Diana's charities).

This case presents the epitome of a nominative fair use.  If VW's argument were upheld, it would mean that no one could write a book about a VW car—or any trademarked subject— without the trademark holder's permission.  This is exactly the absurd result that courts (and now Congress) are seeking to avoid in applying the nominative fair use doctrine.  *See New Kids*, 971 F.2d at 307 ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark.").  Nor does the shape of the books here alter

15

this conclusion—neither book is actually shaped like the New Beetle, as shown in Exhibit L; any

perception that the book is shaped like the car is due only to the fact that all the viewer sees is the

photographic image of the car on the cover of each book.

## IV.   VW'S MARKS ARE NOT DILUTED BY DK.

In the Sixth Circuit, the legal standard for a dilution claim requires a plaintiff to

demonstrate four elements:  (a) the mark is famous; (b) the alleged infringer "adopted the mark"

after the mark became famous; (c) the alleged infringer diluted the mark by tarnishment, which

means by association with a product of negative quality, or by blurring, which means that the

alleged infringer uses the mark to identify a different source of goods, thus weakening the power

of the mark to identify plaintiff's goods; and (d) the defendant's use is commercial and in

commerce.  *K'Arsan Corp. v. Christian Dior Perfumes, Inc.*, 166 F.3d 1214 (6th Cir. 1998).[18]

Even assuming VW can prove the first two elements of the test, it cannot satisfy the third or

fourth elements, and therefore DK is entitled to summary judgment on VW's dilution claims.

### A.   DK's Use Is "Noncommercial."

Noncommercial speech is expressly exempt from dilution claims.  15 U.S.C.

§ 1125(c)(3)(C).[19]  Noncommercial speech is any speech that "is not purely commercial—that is,

[that] does more than propose a commercial transaction."  *Mattel, Inc. v. MCA Records*, 296 F.3d

---

[18]     In 2006, Congress enacted the Trademark Dilution Revision Act of 2006 ("TDRA"), which replaced the Federal Trademark Dilution Act of 1996 ("FTDA"), clarified certain provisions of the dilution statute, relaxed the standard of proof from actual dilution to a likelihood of dilution, and provided an express exception for nominative fair uses of marks.  Courts faced with claims, like those here, for damages based on conduct before the enactment of the TDRA must apply the more stringent FTDA standards, but must apply the TDRA standard for prospective injunctive relief.  *See Dan-Foam A/S v. Brand Named Beds, LLC*, No. 06 Civ. 6350, 2007 WL 1346609, at *6 n.87 (S.D.N.Y. 2007); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 504 (E.D. Va. 2006).  While the Sixth Circuit has not yet issued a decision under the new Act, the applicability of the *K'Arsan* factors was reaffirmed by the new statute.  Congress's addition of an express nominative fair use defense to the Lanham Act's dilution provisions also precludes injunctive relief here as a matter of law.
[19]     The "noncommercial use" exception existed in the original dilution statute and was unchanged by the 2006 TDRA Amendments.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

894 (9th Cir. 2002).  In *Mattel*, the court held that the use of the trademarked word "Barbie" in a song was immune from a dilution claim under §1125(c)(3)(C), despite the song's "obvious" commercial purpose (to sell albums), because the use of the trademark had an expressive purpose as well as a commercial one.  DK's use of images of VW cars in these two children's books is unquestionably noncommercial, because it "does more than propose a commercial transaction." *See Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 696 (noting that Congress expressly stated that exclusions under 1125(c)(4)(b) include "editorial . . . forms of expression") (citing 141 Cong. Rec. S19306-10, S19310 (daily ed. Dec. 29, 1995) (statement of Sen. Hatch); 141 Cong. Rec. H14317-01, H14318 (daily ed. Dec. 12, 1995) (statement of Rep. Moorhead)). Because DK's use qualifies for the statutory exemption for "noncommercial use," VW's dilution claim fails as a matter of law, and DK is entitled to summary judgment on this claim.

### B.    DK's Use Does Not Tarnish or Blur VW's Marks.

VW can present no evidence that DK's use of images of the New Beetle in children's books dilutes VW's marks by tarnishment or blurring—the only two ways in which a mark can be diluted.  "Tarnishment occurs when a famous mark is improperly associated with an *inferior or offensive* product or service."  *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 652 n.11 (E.D. Mich. 2001).  There is no record evidence that DK's products are "inferior" or that they portray the mark in an offensive way.  *See* Ex. R, Thompson Tr. at 38 (noting that the books would not bring VW "into disrepute"); Ex. P, Buckett Tr. at 31.

"Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product."  There can be no blurring here because, as already explained, DK is not using VW's marks "to identify [DK's] goods or services."  *Ford Motor Co.*,

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

177 F. Supp. 2d at 652 n.11.  In fact, DK used VW's marks to identify VW's own car, strengthening rather than blurring the marks' association with VW.[20]

Because VW can present no evidence of any likelihood of "tarnishment" or "blurring" caused by DK's use of images of the New Beetle in *Fun Cars* and *On the Road*, DK is entitled to summary judgment on VW's dilution claim.

## V.    VW HAS NO VALID "COUNTERFEITING" CLAIM[21]

Counterfeiting must involve use of a "spurious" mark.  *See U.S. Structures, Inc. v. JP Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) (citing 15 U.S.C. § 1116(d)(1)(B)(ii)).  But the use here is of an *original* mark—that is, a photograph of a genuine car that necessarily contains the genuine mark—and cannot be counterfeit.  *Id.*  As previously discussed, DK has placed its own logo prominently on *Fun Cars* and *On the Road*, thereby identifying the books as DK's goods—not VW's.  And the VW logo that appears on the books is not a "spurious" mark— it is the mark affixed to *VW's* car that appears in the photograph, the one that VW provided to DK for photography.  In the absence of any evidence use of a "spurious" mark, VW's counterfeiting claims—to the extent any are pled—must fail.

## VI.    VW'S CLAIMS ARE BARRED BY LACHES AND ESTOPPEL.

### A.    VW's Damages Claims Are Barred by Laches.

Laches is the "negligent and unintentional failure to protect one's rights."  *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320-22 (6th Cir. 2001).  A party asserting laches must show:  (1) lack of diligence by the party against whom the defense is

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104

---

[20]    Moreover, VW routinely permits the use of images of its cars in children's books without claiming that its marks are "diluted" by such uses.  Images of VW cars are featured prominently in *Big Book of Cars*, about which VW has never complained, and in books published by other publishers.  *See* Ex. AA; Exs. U-X.  In light of this, VW can hardly claim that the images of VW cars in the two books at issue "weaken" the ability of its trademarks to identify the source of its cars.

[21]    It is unclear whether VW is making a counterfeiting claim.  While VW does not have a separate count in its Complaint alleging counterfeiting, the Amended Complaint repeatedly accuses DK of using a "counterfeit" mark.  *See* Ex. LL, Amended Complaint ¶¶ 35, 40, 49, and 57.

asserted, and (2) prejudice to the party asserting it.  *Id.*  "[A] delay beyond the . . . statutory period is presumptively prejudicial and unreasonable."  *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).  For Lanham Act claims, the Sixth Circuit looks to the analogous state-law limitations period for injury to personal property, which is three years in Michigan.  *Herman Miller*, 270 F.3d at 321.

 VW was clearly on notice of the existence of both *Fun Cars* and *On the Road* at the latest by June 25, 2001, when its representative sent a letter to a DK subsidiary complaining about the books.  Ex. BB.  But VW waited until July 5, 2005—over four years—to file suit.  VW's delay beyond the three-year limitations period gives rise to a presumption of unreasonable delay and prejudice.  VW cannot present any facts to overcome this presumption.  Accordingly, all of its claims to pre-suit damages should be barred by laches.

 **B.** **VW's Request for Injunctive Relief Is Barred by Estoppel.**

 A plaintiff is not entitled to post-filing damages or injunctive relief when a defendant "ha[s] been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark."  *Nartron Corp.*, 305 F.3d at 412.

 It is uncontested that VW cooperated with DK in providing vehicles to be photographed for DK children's books.  Indeed, in April 2002, after the pictures for *On the Road* were taken and after VW was aware of both *Fun Cars* and *On the Road*, DK inquired whether it could use the *On the Road* New Beetle pictures in future DK publications, and a representative of VW responded that "as they are your photos, you can use them whenever you want."  Ex. T; *see also* Ex. R, Thomson Tr. at 47-48 (reaffirming her statement).  The undisputed facts show that VW, through both its conduct and representations, misled DK into believing that it could use its

pictures of the New Beetle in its books as it pleased.  Accordingly, VW should be estopped from seeking post-suit damages and seeking to enjoin DK's use of the pictures.

## CONCLUSION

For the foregoing reasons, DK respectfully requests that this Court grant its motion for summary judgment on all counts of VW's Complaint.

DYKEMA GOSSETT, PLLC                                      PATTERSON BELKNAP WEBB &
                                              -and-        TYLER LLP


By:   /s/ K.J. Miller
        Jill M. Wheaton (P49921)                          Gloria C. Phares
        jwheaton@dykema.com                               Alexis Deise
        K.J. Miller (P62014)                              Ravi V. Sitwala
        kmiller@dykema.com                                1133 Avenue of the Americas
        2723 South State Street                           New York, NY  10036
        Suite 400                                         (212) 336-2000
        Ann Arbor, MI  48104
        (734) 214-7629

Attorneys for Defendant Dorling Kindersley Publishing, Inc.

Dated:  August 31, 2007

## PROOF OF SERVICE

RACHEL ANGER, being first duly sworn, deposes and states that on August 31, 2007, I electronically filed the foregoing *Defendant's Memorandum of Law in Support of its Motion for Summary Judgment* with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:  Edward C. Cutlip, Jr.; Gregory D. Phillips; Scott R. Ryther; Jill M. Wheaton; Cody W. Zumwalt.


/s/ Rachel Anger
RACHEL ANGER
ranger@dykema.com

AA01\201262.1
ID\KJM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•2723 SOUTH STATE STREET, SUITE 400•ANN ARBOR, MICHIGAN 48104