**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VOLKSWAGEN AG, a German
corporation, and VOLKSWAGEN OF
AMERICA, INC., a New Jersey corporation,

Civil Case No. 05-72654

      Plaintiffs,

Judge Denise Page Hood

vs.

DORLING KINDERSLEY PUBLISHING,
INC., a Delaware corporation,

      Defendant.

---

Edward C. Cutlip (P35836)
KERR, RUSSELL AND WEBER
Attorneys for Plaintiffs
500 Woodward Ave., Suite 2500
Detroit, MI  48226
Tel:  (313) 961-0200
ecc@krwlaw.com

Gregory D. Phillips (UT4645)
Cody W. Zumwalt  (UT7197)
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
Tel:  (801) 366-7471
cwz@hpalaw.com

Counsel for Plaintiffs

---

**VW'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 56 of the *Federal Rules of Civil Procedure,* Plaintiffs Volkswagen AG and Volkswagen of America, Inc. (together "VW") respectfully move for summary judgment as to liability and damages on their claims against Defendant Dorling Kindersley Publishing, Inc. ("DK") for federal and common law trademark infringement, dilution, and false designation of origin arising from DK's sale of *Fun Cars* on the ground that *Fun Cars* infringes VW's registered VW EMBLEM® design, NEW BEETLE® trade dress, and BEETLE trademark.

This motion is supported by a memorandum filed herewith.

Dated:  August 31, 2007.

KERR, RUSSELL & WEBER, PLC

By:___s/Cody W. Zumwalt_____
   Gregory D. Phillips
   Cody W. Zumwalt
   HOWARD, PHILLIPS & ANDERSEN
   560 East 200 South, Suite 300
   Salt Lake City, Utah 84102
   Tel: (801) 366-7471
   Email: cwz@hpalaw.com

   Edward C. Cutlip, Jr. (P35836)
   500 Woodward Avenue, Suite 2500
   Detroit, Michigan 48226-3406
   Tel: (313) 961-0200
    Email:  ecc@krwlaw.com

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VOLKSWAGEN AG, a German
corporation, and VOLKSWAGEN OF
AMERICA, INC., a New Jersey corporation,

           Plaintiffs,

vs.

DORLING KINDERSLEY PUBLISHING,
INC., a Delaware corporation,

           Defendant.

Civil Case No. 05-72654

Judge Denise Page Hood

---

Edward C. Cutlip (P35836)
KERR, RUSSELL AND WEBER
Attorneys for Plaintiffs
500 Woodward Ave., Suite 2500
Detroit, MI  48226
Tel:  (313) 961-0200
ecc@krwlaw.com

Gregory D. Phillips (UT4645)
Cody W. Zumwalt  (UT7197)
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
Tel:  (801) 366-7471
cwz@hpalaw.com

Counsel for Plaintiffs

---

**VW'S MEMORANDUM**
**IN SUPPORT OF SUMMARY JUDGMENT**

## STATEMENT OF ISSUES

1.      Whether Volkswagen AG and Volkswagen of America, Inc. (together, "VW") is entitled to summary judgment on its claims against Defendant Dorling Kindersley Publishing, Inc. ("DK") for federal and common law trademark infringement, dilution, and false designation of origin arising from DK's sale of a children's board book titled *Fun Cars* that is designed to function as a toy NEW BEETLE automobile.

2.      Whether VW is entitled to summary judgment on its claim against DK for federal trademark dilution arising from DK's sale of *Fun Cars* in light of incontrovertible evidence establishing that DK used VW's famous, distinctive, and registered NEW BEETLE design, VW EMBLEM, and BEETLE trademarks in commerce without authorization after VW's trademarks became famous and distinctive on a product that competes with products licensed by VW.

3.      Whether VW is entitled to entry of a permanent injunction barring DK from use or display of VW's NEW BEETLE design, VW EMBLEM, and BEETLE trademarks in connection with *Fun Cars*.

4.      Whether VW is entitled to an award of damages for DK's use of VW's registered NEW BEETLE design, VW EMBLEM, and BEETLE trademarks in connection with *Fun Cars*.

## CONTROLLING AUTHORITY

*Ford Motor Company v. Lloyd Design Corp.*, 2001 WL 1356137 (6th Cir. 2001)

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.* 670 F.2d 642 (6th Cir. 1982)

*General Motors v. Lanard VW AG v. D'Amato,* 341 F.Supp.2d 734, 748 (E.D.Mich. 2004)

## TABLE OF CONTENTS

INTRODUCTION AND OVERVIEW ..................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................4

ARGUMENT....................................................................................................9

I.  VW IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS FOR
    INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN BASED ON DK'S
    SALE OF *FUN CARS* .............................................................................10

    A.  DK's Use of Precise Counterfeits of the VW Trademarks
        on Directly Competing Goods Gives Rise to a Presumption of a
        Likelihood of Confusion ...............................................................11

    B.  Even Without the Presumption of Confusion, an Application
        of the Factors for Determining Likelihood of Confusion Requires
        Summary Judgment ......................................................................

        1.  The Toy Car Cases Hold Unauthorized Replication of a
            Full-Sized Automobile in Toy or Model Constitutes
            Trademark Infringement. ...............................................12

        2.  Consumer Confusion is Inevitable under the Toy Car Cases ...................14

            a.  The VW Trademarks are Strong. ..............................................14

            b.  The Parties' Goods are Related................................................14

            c.  The Marks Used by DK are More than Similar to VW's Marks—
                They Are the VW Trademarks.................................................15

            d.  DK Intentionally Copied the VW Trademarks .......................15

            e.   The Likely Degree of Purchaser Care is Low.........................15

            f.   There is Strong Evidence of Actual Confusion. .....................16

            g.  The Parties Use Similar Marketing Channels...........................17

            h.  Likelihood of Expansion.........................................................17

II. VW IS ENTITLED TO SUMMARY JUDGMENT ON ITS
    DILUTION CLAIM....................................................................................17

III.   VW IS ENTITLED TO ENTRY OF AN AWARD OF
       STATUTORY DAMAGES, ATTORNEY'S FEES, AND A
       PERMANENT INJUNCTION ...................................................................................19

       A.    Summary of Available Remedies and VW's Election of
             Statutory Damages ...........................................................................................19

       B.    VW is Entitled to Significant Statutory Damages for Defendant's
             Intentional and Knowing Trademark Infringements.......................................19

       C.    VW is Entitled to a Permanent Injunction .......................................................21

       D.    VW is Entitled to a Permanent Injunction .......................................................21

       CONCLUSION.....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*American Honda Motor Co. v. Pro-Line Protoform*,
325 F. Supp.2d 1081 (C.D. Cal. 2004) ...................................................................12

*Beanstalk Group, Inc. v. AM General Corp.*,
283 F.3d 856 (7th Cir. 2002) .................................................................................12

*Century 21 Real Estate Corp.*,
846 F.2d ...............................................................................................................21

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*,
109 F.3d 275, 280 (6th Cir. 1997) ....................................................................13, 15

*Ford Motor Company v. Lloyd Design Corp.*,
2001 WL 1356137 (6th Cir. 2001) ....................................................................15, 21

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*
670 F.2d 642 (6th Cir. 1982) ..............................................................10, 11, 12, 13, 16

*General Motors Corp. v. Lanard Toys, Inc.*,
468 F.3d 405 (6th Cir. 2006) ..........................................................................10, 12, 13

*Harris v. Emus Records Corp.*,
734 F.2d 1329 (9th Cir. 1984) ...............................................................................19

*Int'l Korwin Corp. v. Kowalczyk*,
855 F.2d 375, 380-81 (7th Cir. 1988) .....................................................................20

*Moseley v. V. Secret Catalogue, Inc.*,
123 S.Ct. 1115 (2003)...........................................................................................18

*N.A.S. Import, Corp. v. Chenson Enters., Inc.*,
968 F.2d 250 (2d Cir. 1992)...................................................................................19

*Paccar, Inc. v. TeleScan Techs., L.L.C.*,
319 F.3d 243 (6th Cir. 2003) .................................................................................16

*Panavision Int'l v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ...............................................................................18

*Peer Int'l Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir. 1990) ..........................................................................19, 20

*Processed Plastic Co. v. Warner Commc'ns, Inc.*,
675 F.2d 852 (7th Cir. 1982) ............................................................................12, 13

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
74 F.3d 488 (4th Cir. 1996) ...................................................................................20

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
112 S.Ct. 2573 (1992) ............................................................................................10

*Warner Bros., Inc. v. Gay Toys, Inc.*,
658 F.2d 76 (2d Cir. 1981).....................................................................................12

*WSM, Inc. v. Tennessee Sales Co.*,
709 F.2d 1084 (6th Cir. 1983) ...............................................................................10

*Wynn Oil Co. v. Thomas*,
839 F.2d 1183 (6th Cir. 1988) .................................................................................3

## STATUTES

15 U.S.C. § 1065 ....................................................................................................14

15 U.S.C. § 1115(b)(4) ...........................................................................................14

15 U.S.C. § 1116 ....................................................................................................19

15 U.S.C § 1116(a) .................................................................................................21

15 U.S.C. § 1117....................................................................................................21

15 U.S.C. § 1117(a) ...............................................................................................19

15 U.S.C. § 1117(c) ...............................................................................................19

15 U.S.C. § 1125(c)(1).............................................................................................18

## TREATISES AND OTHER AUTHORITIES

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
§ 23.01[1] (rev. ed. 1994) ......................................................................................10

x

## <u>INTRODUCTION AND OVERVIEW</u>

Undisputed evidence of record establishes the elements of each of VW's four claims and entitles VW to summary judgment in its favor as to liability and damages based on DK's sale of *Fun Cars*,[1] a children's board book designed to function as a toy NEW BEETLE automobile. The book consists of ten pressboard pages cut in the shape of VW's registered NEW BEETLE design, held together with a Velcro strap. The front and back covers consist of photographic images of VW's NEW BEETLE automobile, to which four working plastic wheels are affixed, as depicted in the photograph shown below:



| *Fun Cars*<br>(image flipped horizontally for purposes of comparison) | NEW BEETLE TRADE DRESS<br>(Reg. No. 2,409,675) |

When the form or shape of an automobile is distinctive, the design or form of the automobile serves to identify the source of the product, just as the manufacturer's brand names and logos serve to identify the source of the product. The design or image of a product is known as its "trade dress" and is protected from infringement just the same as trademarks consisting of words or symbols are protected from infringement. VW's NEW BEETLE design is the modern embodiment of VW's CLASSIC BEETLE design—the world's best-selling car and among the most recognizable and distinctive automobiles ever produced.

---

[1] In light of the deposition testimony provided on February 28, 2007, by DK Publishing Director Beth Sutinis that DK will never resume publication of *On the Road,* VW withdraws its claims relating to that title.

VW's NEW BEETLE design is registered with the U.S.P.T.O., as shown above, and is widely recognized and immensely popular.  The market for products bearing or in the form of the NEW BEETLE design is vibrant, and VW has licensed a number of toy NEW BEETLE automobiles that compete with *Fun Cars.*  Among many other products, VW has licensed Mattel to sell a toy car for Barbie, a Hot Wheels toy car, and a children's board book entitled *Wash Me* that is sold in a package with a NEW BEETLE Hot Wheels toy car, as pictured below:







NEW BEETLE® toy car for Barbie®          NEW BEETLE® Hot                    *Wash Me*
                                                                  Wheels® toy car

DK did not have permission from VW to use the NEW BEETLE design in connection with *Fun Cars.*  DK obtained the photograph shown on the cover of *Fun Cars* in connection with DK's publication of an encyclopedia of automobiles designed for children entitled *Big Book of Cars*.  DK asked VW to provide a NEW BEETLE automobile to be photographed by DK for inclusion in that encyclopedia, and VW agreed.

VW frequently receives requests to use images of VW automobiles in news reporting, text books, encyclopedias, and similar publications, and grants such requests as a matter of routine.  When VW receives requests for use of VW trade dress in toys and other three dimensional objects, by contrast, VW requires a license.  License requests are directed to VW headquarters in Germany pursuant to well-established VW policy.  VW was aware of DK's

reputation for publishing illustrated reference books and granted DK's request for an automobile to be photographed for inclusion in *Big Book of Cars* as a routine matter, having no reason to suspect that DK would later re-use the photographs to create a book that doubles as toy NEW BEETLE automobile.

When identical marks are used to sell nearly identical products, consumer confusion, the essence of each of VW's four claims, is inevitable. "Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 (6th Cir. 1988) (internal citation omitted). Consumers cannot be expected to distinguish between officially-licensed VW goods and competing products like *Fun Cars*. Indeed, the results of a consumer survey commissioned by VW show that 29.2% of survey respondents believe that *Fun Cars* is either put out or authorized by VW, or put out by a company that has a business affiliation with VW. *Declaration and Rule 26 Report of Dr. Glenn L. Christensen* ("*Christensen Report*") at ¶ 12 (attached as Exhibit 1) (without electronic attachments).

As a consequence, VW is now entitled to a permanent injunction enjoining DK from selling *Fun Cars* and awarding VW statutory damages in the amount of $1,500,000 ($500,000 for each of the three trademarks at issue), and an award of its attorney's fees and costs.

Simultaneously with this motion, DK is filing its own motion for summary judgment based on DK's affirmative defenses, on which DK bears the burden of proof. To avoid duplicative briefing and for the sake of analytical simplicity, VW will address DK's affirmative defenses, which are without merit, in its opposition memorandum.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Volkswagen AG ("VW AG") is a German corporation.  Volkswagen of America, Inc. ("VWoA") is a corporation organized under the laws of New Jersey with its principal place of business in Auburn Hills, Michigan.  VWoA is the sole authorized importer and distributor of Volkswagen motor vehicles and genuine parts and accessories therefore into the United States. Linda Scipione Declaration *("Scipione Dec.")* at ¶¶ 2-3 (attached as Exhibit 2).

2.     VW AG holds valid and incontestable trademark registrations for the NEW BEETLE® design (Reg. No. 2,409,675) and the VW EMBLEM® (Reg. No. 1,883,332), which are prominently featured in VW's advertising.  VW AG similarly holds a valid trademark registration for BEETLE® (Reg. No. 2,528,763).  *Id.* at ¶ 4.  These registered trademarks, together with VW's common law trademark rights in the same marks, are herein referred to as the "VW Trademarks."

3.     The VW Trademarks are famous and distinctive trademarks, and VW has invested many millions of dollars promoting and developing the VW Trademarks.  *Scipione Dec.* at ¶ 6; *see also* Trevor Lord, *Big Book of Cars* 8 (Carey Combe ed., DK Publishing 1999) (describing VW EMBLEM as "Volkswagen's famous emblem" and featuring NEW BEETLE design among "the most amazing, unusual, and unbelievable cars in the world").[2]

4.     Through Volkswagen AG, VW licenses third parties to use the NEW BEETLE design in connection with toys and other products, including *Wash Me,* a board book packaged with a toy NEW BEETLE automobile; a model toy car for Barbie; and a model Hot Wheels toy car.  Debra Kingsbury Depo. *("Kingsbury")* at 40:17 to 41:4 (attached as Exhibit 3). Plaintiffs' Answers to Defendant's Fourth Set of Interrogatories at No. 24 (describing authorized goods)

(attached as Exhibit 4).  Such goods are sold online on websites such as *amazon.com* and in a wide range of traditional brick-and-mortar stores, including toy stores, grocery stores, and department stores such as Target and K-Mart.  *Id.* at No. 25; Linda Scipione Depo. (*"Scipione"*) at 77:21 to 79:18 (attached as Exhibit 5).

5.      VW itself sells many different NEW BEETLE toy automobiles designed for children to play with, which are sold on *vw.com,* through VW catalogs, and at VW dealerships. *Scipione* at 72:5 to 73:15.

6.      VW routinely receives and grants requests for the use of its automobiles and images of its automobiles for editorial purposes, including use in text books, reference books, encyclopedias, car reviews, and other forms of news reporting.  In the UK, such requests are handled by VW UK's public relations office, which manages a so-called "press fleet" of nearly 100 VW automobiles and arranges 15-25 automobile loans each week.  Kate Thompson Depo. (*"Thompson"*) at 14:2 to 19:12, 67:5 to 68:15 (describing responsibilities of VW UK's press office and criteria used in handling requests for use of images of VW automobiles for editorial purposes and explaining large number of requests handled per week) (attached as Exhibit 6); Paul Buckett Depo. (*"Buckett"*) at 9:7 to 13:10, 19:25 to 20:21, 57:4-24 (same) (attached as Exhibit 7).

7.      No one from VW UK would usually be present when VW UK loaned out a VW automobile for editorial use.  *Buckett* at 47:9-13.

8.      DK's reputation as a publisher of educational books for children was well known by members of VW UK's public relations office, which had loaned automobiles to DK on a number of occasions to be photographed for such books.  *Buckett* at 35:19 to 37:1.

---

[2] Courtesy copies of each of the three books discussed in this memorandum, namely, *Big Book of*

9.      Pursuant to well-established VW corporate policy, offices such as VWoA and VW UK direct license requests to Volkswagen AG.  *Kingsbury* at 40:17 to 41:4; *Buckett* at 37:2 to 38:4.

*DK's Creation of Fun Cars*

10.     DK is a Delaware corporation with its principal place of business located in New York, New York.  *See* Answer to Amd. Cmplt. at ¶ 7 (Dkt. Entry 48).  DK is known as a publisher of illustrated, reference books.  DK's distinctive look is of color photographs displayed against a white background.  Angela Anderson Depo. (*"Anderson"*) at 29:16 to 30:20 (attached as Exhibit 8); Carey Combe Depo. (*"Combe"*) at 12:21-25 (attached as Exhibit 9).

11.     *Fun Cars* is a children's board book sold by DK that functions like a toy automobile.  Its pages are held together with a Velcro strap, and it has four functional wheels. The front and back cover consist of photographic images of a NEW BEETLE automobile. Under the word "Beetle," a photograph of a NEW BEETLE also appears as one of ten automobiles shown on the pages inside.  A label on the back cover displays DK's logo and states, "The publisher would like to thank Volkswagen and N. Wright/National Motor Museum." *See* Answer to Amd. Cmplt. at ¶ 2.

12.     Children's books such as *Fun Cars* were created at DK by a book team consisting of an editor, responsible for writing the text, and a designer, responsible for selecting the photographs and laying out the pages, both acting under the direction of a publisher.  *Anderson* at 14:3-25; *Combe* at 25:10 to 26:11.

13.     DK obtained the photograph shown on the cover of *Fun Cars* in connection with DK's publication of an earlier book, a children's encyclopedia of interesting automobiles entitled

---

*Cars, Fun Cars,* and *Wash Me,* will be delivered to chambers separately from this filing.

*Big Book of Cars*.  DK editor Carey Combe asked VW's UK public relations office to provide a NEW BEETLE automobile to be photographed for inclusion in a children's encyclopedia of interesting automobiles.  *Combe* at 28:23 to 29:8; *see also Anderson* at 12:10-17.

14.     Ms. Combe testified that the book designer would have been responsible for obtaining a so-called "Copyright and Commission Form" to be maintained in DK's in-house, photograph library together with the photographs in order that the photographs could be used in DK publications again.  Ms. Combe did not attend the photo shoot, did not personally obtain a signed copy of the form, has never seen such a form relating to the photos in question, and does not know why the form, if it ever existed, cannot now be located.[3]  *Combe* at 38:13 to 42:6.

15.     DK art director Claire Patane and a photographer working for DK on a contract basis, Richard Leeney, attended the photo shoot for *Big Book of Cars*.  Ms. Patane had no interactions with anyone associated with VW relating to the use of images of VW automobiles. *Claire Patane's Objections and Responses to Plaintiffs' Written Interrogatories,* Nos. 2 and 4 (attached as Exhibit 10).

16.     To create the image shown in *Fun Cars,* one or more of the photographs taken at the photo shoot for *Big Book of Cars* were digitally altered to change the automobile color to light blue.  *Combe* at 38:7-10.

17.     Angela Anderson, a picture researcher responsible for obtaining appropriate pictures to illustrate text when such pictures came from sources other than DK's in-house, photograph library, testified that she was asked by the DK book team that had commissioned the

---

[3] Paul Buckett, the head of VW UK's public relations office, testified that he was familiar with such forms and that the forms were used to give permission to a third party to use an image in which VW itself held copyrights for purposes other than editorial purposes.  *Buckett* at 38:5-14. No need for the form would arise if DK were to photograph a VW automobile inasmuch as DK would hold the copyrights in such photographs.  *See id.* at 39:7 to 39:14.

photographs used in *Big Book of Cars* to contact VW when DK determined to reuse the photos in *Fun Cars*. *Anderson* at 10:16 to 13:21. She does not remember what the letter said and did not recall receiving a reply from VW, which did not concern her because she regarded the letter "really, as a courtesy letter." *Id.* at 16:6-15, 20:22 to 21:23, and 24:25 to 25:11. Ms. Anderson does not know what became of the folder relating to *Fun Cars* that was once maintained by DK. *Anderson* at 17:20 to 21:23.

18.     The designer for *Fun Cars* and the person responsible for laying out the cover*,* Mark Richards, had no interactions with anyone affiliated with VW. *Mark Richards' Objections and Responses to Plaintiffs' Written Interrogatories,* Nos. 2 and 4 (attached as Exhibit 11).

19.     The publisher responsible for overseeing the creation of *Fun Cars,* Mary Ling, has no recollection of the project and had no interactions with VW. *Mary Ling's Objections and Responses to Plaintiffs' Written Interrogatories,* Nos. 2 and 4 (attached as Exhibit 12).

20.     *Fun Cars* is sold online on DK's website, *dk.com,* and on the websites of online retailers such as *barnesandnoble.com* and *amazon.com. Fun Cars* is sold through bookstores such as Borders and Barnes & Noble; through mass merchandisers such as Wal-Mart and K-mart; library wholesalers, which buy in large amounts from publishing companies and then distribute to smaller retailers and libraries; through special markets such as book clubs and fairs; and through catalogs like One Step Ahead. Beth Sutinis Depo. (*"Sutinis Depo."*) at 17:7 to 23:23 (attached as Exhibit 13).

21.     *Fun Cars* is one of several books that function as toys sold in DK's "Wheelie" series. DK has entered into license agreements with third parties to obtain authorization to depict automobile designs featured on the covers of other Wheelie books, including an agreement with Parachute Publishing, Inc. relating to books featuring John Deere trade dress and Clear Channel

Communications relating to truck trade dress.  Copies of the agreements are attached as Exhibits 14 and 15 (filed under seal); *see also Sutinis Depo.* at 65:14 to 66:15 (regarding agreement with Parachute Publishing, Inc.).

22.     On June 25, 2001, January 22, 2002, and on or around April 23, 2004, VW sent letters to DK objecting to DK's sale of *Fun Cars.*  Gloria Phares Declaration at ¶ 11 (Dkt. Entry 10 and Exhibits 7-8 thereto).

*Dr. Christensen's Survey*

23.     Volkswagen retained Dr. Glenn Christensen as an expert witness in this case to conduct a survey measuring the extent of consumer confusion caused by *Fun Cars.*  Dr. Christensen is a PhD in Marketing and Consumer Behavior with experience conducting marketing and consumer surveys in general and in testifying as an expert as to the likelihood of consumer confusion in particular.  *Christensen Report* at ¶¶ 2–8.  Dr. Christensen has published numerous scholarly articles and conducted numerous consumer research studies related to consumer psychology.

24.     Dr. Christensen's survey found a net confusion rate of 29.2%.  *Id.* at ¶ 94.  Specifically, he found that 29.2% of the survey respondents erroneously believed that DK's *Fun Cars* product is "either put out by Volkswagen, or is put out with the authorization of Volkswagen, or that the company that puts out the product has a business affiliation with Volkswagen."  *Id.* at ¶ 12.

25.     The Christensen survey is the only survey presented in this case.  DK has not presented a survey.

## ARGUMENT

**I.    VW IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS FOR INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN BASED ON DK'S SALE OF *FUN CARS*.**

"Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles."  *WSM, Inc. v. Tennessee Sales Co.,* 709 F.2d 1084, 1086 (6th Cir. 1983).  DK's liability for infringement is clear.  DK has used a precise copy of VW's NEW BEETLE® trade dress to create a book that functions as a toy car that is sold in direct competition with and in the same channels of trade as related, if not identical, goods licensed by VW.

To prevail, VW must show that its marks are protectable and that DK's use of its marks is likely to cause confusion as to source, sponsorship, affiliation, or endorsement.[4]  The VW Trademarks are unquestionably distinctive, non-functional, and entitled to protection, and the undisputed facts in this case also establish a strong likelihood of confusion under two alternative theories.  First, likelihood of confusion is presumed where an identical trademark is intentionally copied by the infringer on competing goods.  Second, application of the traditional factors for determining likelihood of confusion to the undisputed facts similarly establishes that confusion is inevitable.  Indeed, this conclusion is confirmed by a series of toy car cases, including the Sixth Circuit's recent decision in *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405 (6th Cir. 2006), finding a likelihood of confusion based on the reproduction of a famous vehicle's trade dress in a toy car.

---

[4] *Two Pesos, Inc. v. Taco Cabana, Inc.,* 112 S.Ct. 2573, 2757 (1992); *see also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 23.01[1] (rev. ed. 1994) (hereafter, "*McCarthy*") (explaining "likelihood of confusion" is basic test for both common law trademark infringement and federal statutory trademark infringement); *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 647 (6th Cir. 1982) (holding "standard of proof needed to prevail on false designation claim under § 43 is showing of 'likelihood of confusion'").

**A.    DK's Use of Precise Counterfeits of the VW Trademarks on Directly Competing Goods Gives Rise to a Presumption of a Likelihood of Confusion.**

In many cases, a likelihood of confusion can be established only by evaluating the degree of similarity between two distinct marks in light of a multi-factored inquiry.  However, such multi-factored balancing is unnecessary in cases, like this one, where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the plaintiff's own goods.

Under Sixth Circuit precedent, a defendant's use of an exact copy of a plaintiff's distinctive, registered trademarks on goods that compete with the plaintiff's own licensed merchandise is *presumed* to cause consumer confusion—and thus to sustain a claim for infringement.  *Wynn Oil*, 839 F.2d at 1191 (explaining such cases are "open and shut" and do not require 'protracted litigation to determine liability for trademark infringement'").

Both elements of the presumption are undisputedly present here:  DK has copied VW's NEW BEETLE design in meticulous detail (i.e., by use of a digitally-altered photograph) and has offered the resulting product, a book that functions as a toy car, for sale in direct competition with merchandise officially licensed by VW.  *See Fact Stmt.* at ¶¶ 4-5, 20.  VW is entitled, therefore, to a presumption of confusion and, consequently, entry of judgment in its favor on its claims for trademark infringement and false designation of origin.

**B.    Even without a Presumption of Confusion, an Application of the Factors for Determining Likelihood of Confusion Requires Summary Judgment.**

Although an application of the traditional factors for determining likelihood of confusion is unnecessary in this case, the analysis nevertheless demonstrates that summary judgment should be granted.  Each of the eight factors is considered in turn, below.  *See Frisch's,* 670 F.2d at 647-48.  These factors are simply a guide, "and a plaintiff need not show that all, or even most

11

of the factors are present." *Wynn,* 839 F.2d at 1186.

The *Frisch* factors weigh heavily in Volkswagen's favor. The likelihood of consumer confusion arising out of DK's use of the VW Trademarks is clear, moreover, under a line of cases finding infringement by toy cars that incorporate the body styles of famous automobiles.

### 1.   The Toy Car Cases Hold Unauthorized Replication of a Full-Sized Automobile in Toys or Models Constitutes Trademark Infringement.

In a series of cases culminating in the Sixth Circuit decision in *General Motors Corp. v. Lanard Toys*, the courts consistently have found a likelihood of confusion arising out of a toy manufacturer's misappropriation of the distinctive trade dress and trademarks of the full-scale vehicles that they copy. *See American Honda Motor Co. v. Pro-Line Protoform*, 325 F. Supp.2d 1081 (C.D. Cal. 2004); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981); *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852 (7th Cir. 1982); *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) (recognizing that if "a toy company wanted to make a toy Hummer," it would have to seek a "license").

*Processed Plastic* and *Warner Bros.* both involved unauthorized toy replicas of the 1969 Dodge Charger featured in the "Dukes of Hazzard" television series. In *Warner Bros.*, the district court had refused to preliminarily enjoin the defendant on the ground that there could be no proof of confusion because the plaintiff was not in the business of manufacturing toy cars and because purchasers were "not concerned with who manufactured the toy." 658 F.2d at 79. On appeal, the court held that "it is not necessary that [plaintiff] actually manufacture the toy cars, but merely that a confusion as to manufacture or sponsorship result," concluding that there was "no doubt" that the plaintiff had met its burden of proof of the likelihood of confusion as to sponsorship." *Id.*

The court noted that without the injunction, the plaintiff would suffer substantial lost

sales and its licensing program would "lose much of the confidence reposed in it by the licensees, who also made substantial investments based upon the exclusivity of their licenses." *Id.* In *Processed Plastic*, the Seventh Circuit made a similar point, explaining that if the defendant were permitted to continue to misappropriate the plaintiff's trade dress and trademarks, it would "vitiate [plaintiff's] entire licensing program and damage the good will" developed by plaintiff.  675 F.2d at 858.

Finally, the Sixth Circuit's recent decision in *General Motors v. Lanard* reaches a similar conclusion on a more detailed, multi-factored analysis.  In that case, the Sixth Circuit affirmed summary judgment for plaintiff General Motors on its claim for infringement of the "Hummer Nose Design trademark."  *Id.* at 413.  Defendant Lanard's "ATK" toy vehicle was "modeled after" the HUMMER® and used a "grille design" similar to that protected by GM's trademark registration.  *Id.* at 411.  The Sixth Circuit's analysis affirming summary judgment against Lanard also sustain's Volkswagen's motion in this case:

> To demonstrate trademark infringement, the plaintiff must show that the use of the allegedly infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (citing 15 U.S.C. § 1114).  In order to determine confusion, this Court examines the eight so-called *Frisch* factors:  "(1) strength of the plaintiff's mark, (2) relatedness of the goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the defendant's intent in selecting its mark, and (8) likelihood of expansion of the product lines.". . .
>
> Upon review of the record, we find there to be sufficient evidence to grant summary judgment in favor of General Motors on the issue of a likelihood-of-confusion. The "strength of the mark" factor heavily favors General Motors, as the trademark in question has been federally registered and General Motors places the grille of a Hummer prominently within a number of its advertisements for the vehicle. The "similarity of the marks" and the "defendant's intent in selecting the mark" both heavily favor General Motors, as there is undisputed evidence that the design of the front grille of Lanard's toys was copied directly from the Hummer vehicle. Also, the "likely degree of purchaser care" favors General Motors, as the product in question is a series of toys. It is highly unlikely that a child or adult, in the selection of a toy, will carefully evaluate whether the Hummer-like vehicle is actually from

the maker of Hummer or another source of goods. They will merely recognize the grille shape, recognize the general shape, and purchase based on that recognition. The "relatedness of the goods and services" also weighs in favor of General Motors, as the toy car is quite closely related to the actual car on which the registered trademark of the grille is found.

468 F.3d at 413-14.

### 2. Consumer Confusion is Inevitable under the Toy Car Cases.

The above-cited cases provide overwhelming support for VW's motion. The Sixth Circuit's analysis in *General Motors* identifies numerous factors that establish a likelihood of confusion in this case.

### d. The VW Trademarks are Strong.

As in *General Motors*, the VW Trademarks are federally registered and have been featured prominently in extensive advertising. *Fact Stmt.* at ¶¶ 2-3. In the words of DK, the NEW BEETLE® is among the "most amazing, unusual, and unbelievable cars in the world." *See Big Book of Cars*. As incontestable marks, moreover, the NEW BEETLE design and the VW EMBLEM are entitled to protection as a matter of law and are presumed to have secondary meaning associating the marks with VW. *See* 15 U.S.C. § 1065; *see also Wynn*, 839 F.2d at 1187 (holding incontestable marks "must be considered strong and worthy of full protection"). Under these circumstances, the strength of the mark factor heavily favors VW.

### e. The Parties' Goods are Related.

Second, as in *General Motors*, "[t]he relatedness of the goods and services' also weighs in favor of [VW], as the toy car is quite closely related to the actual car on which the registered trademark … is found." *Id.* In fact, in this case this factor weighs even more heavily in VW's favor, since VW is in the business (both directly and through its licensees) of marketing toy cars and books that compete even more directly with DK's *Fun Cars*. *Fact Stmt.* at ¶¶ 4-5.

14

### f.   The Marks Used by DK are More than Similar to VW's Marks—They *Are* the VW Trademarks.

"Similarity of marks is a factor of considerable weight." *Daddy's Junky*, 109 F.3d 275, 282-83 (6th Cir. 1997). The "similarity-of-the-marks" factor was devised by courts because many infringement cases involve the use of a mark that is not identical to, but is alleged to be confusingly similar to, the plaintiff's mark. Unlike those cases, DK uses precise counterfeits of VW's famous marks. This factor weighs strongly in VW's favor.

### d.   DK Intentionally Copied the VW Trademarks.

As in the *General Motors* case, a simple comparison of the NEW BEETLE® and of DK's product easily shows that the latter design was "copied directly" from the NEW BEETLE design. 468 F.3d at 413. The identity of shape, structure, and design, in other words, is hardly coincidental. DK is well aware of the goodwill and commercial magnetism developed by VW in the NEW BEETLE, and it is for that reason that DK chose to copy that design so carefully. Such intentional misappropriation sustains a presumption of consumer confusion. DK's subjective beliefs regarding the propriety of its conduct are irrelevant.

DK not only obtained licenses to use the trade dress of other manufacturers, such as John Deere, but received and reviewed cease and desist letters sent by VW. In proceeding without the authorization that DK knew was required, DK's conduct demonstrates bad faith. *Ford Motor Co. v. Lloyd Design Corp.,* 184 F.Supp.2d 665, 686 (E.D. Mich. 2002) (finding willful infringement and awarding attorney's fees based on evidence showing defendant had filed unsuccessful license application).

### e.   The Likely Degree of Purchaser Care is Low.

As in General Motors, "the 'likely degree of purchaser care' favors [VW], as the product in question is a … toy[]. It is highly unlikely that a child or adult, in the selection of a toy, will

carefully evaluate whether the [BEETLE®]-like vehicle is actually from the maker of [the BEETLE®] or another source of goods.  They will merely recognize the [similarity in] … general shape, and purchase based on that recognition."  468 F.3d at 413. An inexpensive product such as *Fun Cars,* which bears the suggested retail price of $5.99 on the back cover, is not likely to be the object of intensive consumer research, but rather subject to "impulse buying." *Frisch's,* 670 F.2d at 648.

Even if consumers could ordinarily be expected to exercise some degree of care in purchasing toys for their children, the close similarity (indeed photographic reproduction) of the marks "may lead a purchaser who is extremely careful and knowledgeable about the product he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Paccar,* 319 F.3d at 254.

### f.    There is Strong Evidence of Actual Confusion.

"[P]roof of actual confusion is not necessary …, but it is obviously the most probative proof of the likelihood of confusion."  *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261 (6th Cir. 1985).  "Valid consumer surveys can be significant evidence of actual confusion." *Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*, 965 F.Supp. 925, 933 (E.D. Mich.1997) (citing *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 775 (8th Cir.1994)).  Although the courts have not attempted to identify a precise numerical threshold, they consistently have found that survey results showing confusion at or above 25% constitute "strong evidence of actual confusion."  *Sally Beauty*, 304 F.3d at 979 – 80.[5]

---

5 *See also McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1 U.S.P.Q.2d 1761 (S.D.N.Y. 1986) (25% supports finding of likely confusion); *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F. Supp. 21, 14 U.S.P.Q.2d 1124 (S.D.N.Y. 1990) (a result of 28% level of confusion supports a finding of a likelihood of confusion); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 U.S.P.Q.2d 1889 (Fed. Cir. 1991) (a result of 30%

VW has presented persuasive proof of actual confusion in the form of the survey conducted by Dr. Glenn Christensen. *Fact Stmt.* at ¶¶ 23 – 25. Dr. Christensen surveyed 1000 consumers of childrens' book and toys. He found that 29.2% of such consumers who were shown a copy of *Fun Cars* believed that *Fun Cars* was either put out by VW or put out with VW's authorization. *Christensen Report* at ¶ 12. This is significant evidence of actual confusion that makes this an even stronger case for summary judgment that the *General Motors* case.

### g.        The Parties Use Similar Marketing Channels.

The similarity of the parties' marketing channels is another important factor that weighs in VW's favor. Both parties' goods are available for sale on the Internet on the same websites and types of websites, for example *amazon.com,* and in other outlets in direct competition with one another, such as K-Mart. *Fact Stmt.* at ¶¶ 4-5 and 20. Thus, this factor too favors VW.

### h.        Likelihood of Expansion.

The "likelihood of expansion" factor is another factor that tilts the analysis even more heavily in favor of Volkswagen. The parties are already in direct competition in the same market inasmuch as VW has licensed its marks for use in connection with toy automobiles such as the NEW BEETLE Hot Wheels car and books such as *Wash Me* that serve the same function as *Fun Cars. See, e.g., Wynn,* 839 F.2d at 1189 (finding CLASSIC mark used in connection with car wax infringed by use of CLASSIC in connection with car wash).

## II.        VW IS ENTITLED TO SUMMARY JUDGMENT ON ITS DILUTION CLAIM.

---

confused respondents supports a finding of likely confusion); *Gateway, Inc. v. Companion Products, Inc.*, 384 F.3d 503, 72 U.S.P.Q.2d 1591 (8th Cir. 2004) (39% confusion rate on survey exceeds the rate court previously found sufficient.); *Bell v. Starbucks U.S. Brands Corp.*, 389 F. Supp. 2d 766, 76 U.S.P.Q.2d 1254 (S.D. Tex. 2005), judgment aff'd, 205 Fed. Appx. 289 (5th Cir. 2006), cert denied 2007 WL 435912 (2007) (25% is sufficient to show a "significant" level of "actual confusion" and to support a finding of infringement).

VW is entitled to summary judgment on its claim for trademark dilution.  To prevail on this claim, VW need only show "that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."  *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998) (interpreting 15 U.S.C. § 1125(c)(1)).[6]

The famousness and distinctiveness of the VW Trademarks cannot be questioned, as DK itself acknowledges.  *Fact Stmt.* at ¶¶ 2-3.  Nor can there be any dispute that DK is making commercial use of the VW Trademarks after those marks became famous.

The final element is established as a matter of law when identical marks are used on similar goods.  In that circumstance, dilution—the capacity of the famous mark to identify and distinguish the goods of the trademark holder—indisputably occurs.  *See, e.g., Moseley v. V. Secret Catalogue, Inc.*, 123 S.Ct. 1115, 1125 (2003) ("It may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical.").

---

6 On October 6, 2006, the Trademark Dilution Act was replaced by the Trademark Dilution Revision Act ("TDRA"), which, in primary part, makes clear that no showing of actual dilution is required.  The statute currently provides that the owner of a famous and distinctive trademark is entitled to an injunction against another person whose use of the mark in commerce "is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *See* Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, 120 Stat. 1730 (amending 15 U.S.C. § 1125(c)(1946)).  The only reported decision to date to address the applicability of the TDRA to cases pending prior to October 6, 2006, found the TDRA to have retroactive application.  *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F.Supp.2d 495 (E.D. Va. 2006) (applying TDRA to complaint filed prior to October 6, 2006, on ground that right to injunctive relief "must be determined as of the time of the hearing").  Because actual

Thus, VW is entitled to judgment in its favor on its dilution claim.

### III.   VW IS ENTITLED TO ENTRY OF AN AWARD OF STATUTORY DAMAGES, ATTORNEY'S FEES, AND A PERMANENT INJUNCTION.

#### A.   Summary of Available Remedies and VW's Election of Statutory Damages.

Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.  15 U.S.C. § 1117(c).  VW exercises its rights under the Lanham Act to elect an award of statutory damages.

In addition to the recovery of statutory damages, the Lanham Act provides for an award of costs and, in "exceptional" cases, attorney's fees.  15 U.S.C. § 1117(a).  Finally, in addition to damages, a court may grant a trademark owner permanent injunctive relief.  15 U.S.C. § 1116.

#### B.   VW is Entitled to Significant Statutory Damages for Defendant's Intentional and Knowing Trademark Infringements.

"If statutory damages are elected, '[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'"  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (*quoting Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (maximum statutory damages awarded)).  Under the Lanham Act, the present statutory maximum and minimum amounts are $1,000,000 and $500, respectively, for each counterfeit trademark.  15 U.S.C. § 1117(c).

An infringement is willful, hence triggering enhanced statutory damages, if the defendant had "knowledge that its actions constitute an infringement."  *N.A.S. Import, Corp. v. Chenson*

---

confusion is present in this case as a matter of law, this Court need not decide whether the TDRA applies.

*Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citations and quotations omitted).  This

knowledge, however, need not be actual; constructive knowledge will suffice.  In other words,

knowledge need not be proven directly but may be inferred from the defendant's conduct.  *Id.*;

*accord WSM*, 709 F.2d at 1087 ("Wrongful intent need not, and ordinarily cannot, be established

by direct evidence, but may be inferred from defendant's acts.") (citations omitted).  Courts

consider a defendant's continued infringement after notice of his wrongdoing to be the most

probative evidence supporting a finding of willfulness.  *Int'l Korwin Corp. v. Kowalczyk*, 855

F.2d 375, 380-81 (7th Cir. 1988) (willfulness may be demonstrated where the infringer is

provided notice of its infringing conduct).

Abundant evidence demonstrates that DK was aware that its actions infringed VW's

rights, including its acquisition of licenses to use similar trade dress belonging to others.  *See

Fact Stmt.* at ¶ 21.  Most tellingly, however, is the fact that DK persisted in its unauthorized use

of the VW Trademarks despite receipt of actual notice from VW that its actions were

unauthorized.  *Fact Stmt.* at ¶ 22.  Given DK's awareness of the need to obtain permission to use

the intellectual property of others, its infringing conduct can only be described as willful.

Putting aside any question of the amount of actual damages, VW is entitled to an

enhanced statutory damages award.  In fact, courts have held that a successful plaintiff in a

trademark infringement case is entitled to recover enhanced statutory damages even where the

actual damages are nominal or non-existent.  *Peer Int'l*, 909 F.2d at 1336-37; *Superior Form

Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 496-98 (4th Cir. 1996).

Accordingly, VW is entitled to statutory damages of up to $1,000,000 for each trademark

willfully infringed.  However, for purposes of resolving this case by summary judgment, VW

seeks statutory damages of $500,000 for each the three registered trademarks at issue (VW

EMBLEM, BEETLE, and the NEW BEETLE design), for a total of $1,500,000.  Such an award is appropriate to deter the willful circumvention of an active licensing market like that offered by VW.  Absent a significant award, entities like DK would have every incentive to eschew entering into any license agreement since the worst that could happen would be an injunction against any further infringement.

### C.    DK's Conduct is Exceptional.

In the Sixth Circuit, willful infringement renders this case exceptional within the meaning of 15 U.S.C. § 1117. *Ford Motor Co. v. Lloyd Design Corp.,* 184 F.Supp.2d at 686.  For all the reasons described in the proceeding section, this is an exceptional case.  Thus, VW is entitled to recover from DK the attorney's fees that it has incurred in this case.

### D.    VW is Entitled to a Permanent Injunction.

Under the Lanham Act, when a trademark owner's rights are being violated, that party is entitled to an injunction.  15 U.S.C § 1116(a); *Century 21 Real Estate Corp.*, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.  It is the remedy provided by federal and state trademark infringement statutes.").  Thus, in this case, VW should be granted the injunctive relief that it has requested in its Complaint, specifically, an order enjoining DK from making any unauthorized use of the VW Trademarks or otherwise deceptively or unfairly competing with VW.  *See* Amd. Cmplt. at ¶ 1 (in relief section) (Dkt. Entry 47).

### CONCLUSION

Based on the foregoing, the Court should grant VW's motion for summary judgment on its claims against DK arising from DK's sale of *Fun Cars.*

Dated:  August 31, 2007.

KERR, RUSSELL & WEBER, PLC


By:___s/Cody W. Zumwalt_____
           Gregory D. Phillips
           Cody W. Zumwalt
           HOWARD, PHILLIPS & ANDERSEN
           560 East 200 South, Suite 300
           Salt Lake City, Utah 84102
           Tel:    (801) 366-7471
           Email: cwz@hpalaw.com

           Edward C. Cutlip, Jr. (P35836)
           500 Woodward Avenue, Suite 2500
           Detroit, Michigan 48226-3406
           Tel:    (313) 961-0200
           Email:  ecc@krwlaw.com


           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2007, I electronically filed the foregoing document

with the Clerk of the Court using the ECF system which will send notification of such filing to

the

following:


**Jill Wheaton**
jwheaton@dykema.com chammond@dykema.com

**Kathryn J. Miller**
kjm@dykema.com,ranger@dykema.com


s/Julianne Partridge
Howard, Phillips, & Andersen
