**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VOLKSWAGEN AG, a German corporation,
and VOLKSWAGEN OF AMERICA, INC.,
a New Jersey corporation,

       Plaintiffs,

                                 Case No. 05-72654

v.

                                 HONORABLE DENISE PAGE HOOD

DORLING KINDERSLEY PUBLISHING,
INC., a Delaware corporation,

       Defendant.

_____/

**MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT MOTIONS**
**and**
**NOTICE OF STATUS CONFERENCE**

**I.      INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. #59, filed August 31, 2007]. This matter is also before the Court on Plaintiffs' Motion for Summary Judgment [Dkt. #61, filed August 31, 2007]. Responsive and reply briefs were filed in connection with both motions. A hearing on the motions was held on October 10, 2007.

**II.      FACTS**

This action commenced on July 5, 2005. The Amended Complaint was filed on July 7, 2006. Plaintiffs Volkswagon AG and Volkswagon of America, Inc. (collectively, "VW") assert claims of federal trademark infringement under 15 U.S.C. § 1114 (Count I), false designation of origin and trade dress infringement under 15 U.S.C. § 1125(a) (Count II), dilution under 15 U.S.C. § 1125(c)

(Count III), and common law trademark infringement (Count IV). The marks at issue in the Amended Complaint are the VW EMBLEM (USPTO Reg. No. 1,883,332), the BEETLE[1] trademark design and the NEW BEETLE trade dress design (USPTO Reg. No. 2,409,675).

Plaintiffs allege that Defendant Dorling Kindersley Publishing, Inc. ("DK"), a publisher of children's books, infringed and diluted VW's registered trademarks and trade dress with a book that Defendant published, *Fun Cars*. VW asserts that DK did not have permission from VW to use VW's marks in connection with the NEW BEETLE pictures that DK included in *Fun Cars.* VW does not dispute that DK had permission to use the marks in connection with the NEW BEETLE pictures that DK included in *Big Book of Cars*, an earlier publication. The pictures of the NEW BEETLE in *Fun Cars* are the same as the picture of the NEW BEETLE in the table of contents of *Big Book of Cars*, except for the color. VW seeks an audit of DK's books, damages, costs, attorney's fees, and a permanent injunction.

DK maintains that it had written permission from VW to use the marks in connection *Fun Cars*, which was first published in 1999. DK also asserts the affirmative defenses of non-use, First Amendment protection, nominative fair use, laches, and estoppel.

The parties are in dispute as to whether or not the book *Fun Cars* can be categorized as a toy car or a book. While DK categorizes *Fun Cars* as a book, VW calls *Fun Cars* "a children's book designed to function as a toy NEW BEETLE automobile." (VW's Mot. For. Summ. J. at 1.) *Fun*

---

[1] VW does not identify the registration number of the BEETLE trademark in its Amended Complaint.

2

*Cars* is a book with ten pressboard pages.[2]  The book has four wheels and is held shut with a velcro strap.  Each two-dimensional page is cut in the side view shape of VW's registered NEW BEETLE design.  The pictures of the NEW BEETLE in *Fun Cars* also show, on the side window of the car, a very tiny depiction of the VW EMBLEM mark.  The VW EMBLEM mark was attached to the vehicle that DK originally photographed.  The NEW BEETLE appears on the front and back covers of the book.

VW alleges that *Fun Cars* competes directly with and is sold in the same channels as other products which are licenced by VW: a toy NEW BEETLE for Barbie; a toy Hot Wheels NEW BEETLE; and children's book, *Wash Me*, which is packaged with a toy Matchbox NEW BEETLE.  *Wash Me* is a book with fourteen rectangular-shaped pressboard pages.  The *Wash Me* book tells the story of a NEW BEETLE going through a car wash.  The *Wash Me* book's last page is extended in length to include a packaged toy car.

Before VW initiated the instant suit, the parties attempted to resolve the matter through extra-judicial means.  VW alleges that it sought to resolve this dispute through correspondence with DK from 2001 to 2004.

## III.    ANALYSIS

---

[2]A picture of a BEETLE-type car appears on page 7 of the book.  On page 1 appears a short car; on page 2 appears a long car; on pages 3 and 4 appear convertibles; on pages 5 and 6 appear hot rods; on page 8 appears a solar-powered car; on page 9 appears a jalopy; and on page 10 appears a Delorean.

3

A.        **Standard of Review/Applicable Law**

Both of the parties have moved the Court for summary judgment.  Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).  The party moving for summary judgment bears the initial burden and need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987).  Rather, "the burden on the moving party may be discharged by showing . . . to the district court . . . an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

Once the moving party has met its burden of production, the nonmoving party must then go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

When ruling on a summary judgment motion, a district court should view the evidence in a light most favorable to the nonmoving party.  *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.

4

1991), *cert. denied*, 503 U.S. 939 (1992). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**B.     DK's Motion for Summary Judgment as to the VW BEETLE and VW EMBLEM Claims**

**1.     VW BEETLE Mark**

The Court grants DK's Motion for Summary Judgment in connection with the alleged infringement of VW's BEETLE mark.  In the Amended Complaint, VW alleges that DK uses the mark "in prominent lettering" on page 7 of *Fun Cars*.  (Am. Compl. at 9.)  The parties' briefs do not present specific arguments as to DK's use of the BEETLE mark on page 7 of *Fun Cars*. Nevertheless, the Court analyzes this claim in the context of the fair use doctrine.

"Fair use permits others to use a protected mark to describe aspects of their own goods." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (citation and internal brackets and quotations removed).  A court must consider whether defendant has used the mark in its descriptive sense and in good faith in evaluating a defense of fair use.  *Id.* (citations omitted).

The Court has reviewed page 7 of *Fun Cars* and concludes that DK's use of the BEETLE mark was used in good faith and in its descriptive sense.  *Id.* at 921.  The word BEETLE is used only to describe the actual vehicle.  Accordingly, "the claim [i]s barred by the fair use defense as a matter of law."  *Id.*

**2.     VW EMBLEM Mark**

5

The Court also grants DK's Motion for Summary Judgment in connection with the alleged infringement of VW's VW EMBLEM mark.  In the Amended Complaint, VW alleges that DK uses a "small but unmistakable counterfeit of the world-famous VW EMBLEM."  (Am. Compl. at 9).  The parties' briefs do not present specific arguments as to DK's use of the VW EMBLEM mark.

Upon review, the Court concludes that the VW EMBLEM mark's size in relation to the book is very small.  The mark is very difficult to discern with the naked eye, unless a viewer gives the book a close inspection or uses the aid of a magnifying device.  The Court therefore concludes as a matter of law that there is no possible likelihood of confusion as to the VW EMBLEM mark.  *See General Motors Corp. v. Keystone Automotive Industries, Inc.,* 453 F.3d 351, 359 (6th Cir. 2006) (noting that if an alleged infringing product is hidden, it "cannot cause . . . confusion as to origin or sponsorship").

Even if the VW EMBLEM mark was larger, the deposition testimony of VW employee, Katherine Thompson, would preclude a finding as to infringement.  Ms. Thompson testified that the VW EMBLEM mark was "part of the car" and that VW would not have asked DK to remove it from any of DK's pictures.  (Thompson Dep. at 54; Dkt. #60-20 at 10.)  In fact, Ms. Thompson testified that VW would have objected if DK had attempted to remove the mark from any pictures.

The fair use doctrine also bars VW's claim regarding the VW EMBLEM mark.  As with the VW BEETLE mark claim, the Court finds that the VW EMBLEM is used only to describe the actual vehicle.  Accordingly, the claim is barred by the fair use defense as a matter of law.  *ETW*, 332 F.3d

6

at 921.

The Court now proceeds with its analysis of VW's claims of trademark infringement in connection with VW's NEW BEETLE mark.

### C.    VW's Motion for Summary Judgment as to its NEW BEETLE Mark

#### 1.    Trademark Infringement, Counts I and II

##### a.    Applicable Law

To show trademark infringement under 15 U.S.C. § 1114 (Count I), a plaintiff must show that the use of the allegedly infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citations omitted); *see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (noting that "[t]he touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties").[3]

---

[3] "In response to an action for infringement, a defendant may assert a counterclaim of invalidity." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1325 (Fed. Cir. 2008) (citing 15 U.S.C. § 1119). Here, DK asserted no such counterclaim. Nor could it. As discussed later in this opinion, VW's mark is incontestable. With trademarks, incontestible status "constitutes conclusive evidence that a mark is valid." *Daddy's Junky Music Stores*, 109 F.3d at 282.

DK applies a slightly different test in its briefs which conflates the elements of trademark infringement with trade dress infringement. DK argues, without providing any supporting case law, that VW bears the burden of proof as to DK's use of the mark as a trademark. The Court disagrees. "Where one makes use of the trade-mark of another to sell one's own goods, the burden is on him to justify such use." *Champion Spark Plug Co. v. Emener*, 16 F.Supp. 816

7

Trademark infringement under Michigan law (Count IV) employs the same likelihood of confusion test. *Wilson v. Salem Sportswear, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1997). "This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law." *Lanard Toys*, 468 F.3d at 412 (citation omitted).

VW first argues, citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 (6th Cir. 1988), that confusion can be presumed in the instant case because DK used an exact copy of VW's mark in direct competition with VW's mark. The Court disagrees. *Wynn Oil* held that when two marks "use absolutely identical language to sell a nearly identical service, the likelihood of confusion must be considered great." 839 F.2d at 1190-91. In that case, the plaintiff used the trademark CLASSIC and CLASSIC CAR WASH in connection with the sale of car care products. *Id.* at 1185. The defendant used the mark CLASSIC CAR WASH or CLASSIC CAR WASH SYSTEMS in connection with self service car wash stations. *Id.* Here, there is no "identical language" at issue.

In the alternative, VW argues that an analysis of the eight factors set forth in *Frisch's Restaurants v. Elby's Big Boy, Inc.,* 670 F.2d 642, 648 (6th Cir. 1982), demonstrates a likelihood of confusion, relying on *Lanard Toys*, 468 F.3d at 412 and several supporting prior cases from other circuits (collectively, "Toy Car cases").[4] The eight *Frisch* factors include: 1) strength of the mark;

---

(E.D. Mich. July 17, 1936) (no pin cites provided) (citing *Jacobs v. Beecham*, 221 U.S. 263, 271 (1911)).

[4] The Toy Car cases generally involve a toy manufacturer's misappropriation of a car manufacturer's distinctive trademarks or trade dress. In *Lanard Toys*, the defendant toy

2) relatedness of the goods or services; 3) similarity of the marks; 4) likely degree of purchaser care; 5) the defendant's intent in selecting its mark; 6) marketing channels used; 7) likelihood of expansion of the product lines; and 8) evidence of actual confusion. *Lanard Toys,* 468 F.3d at 412 (factors rearranged). A plaintiff must demonstrate a likelihood of confusion to obtain equitable relief; a plaintiff must demonstrate *actual* confusion to recover statutory damages. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). Analyzing the *Frisch* factors in a light most favorable to DK, the Court finds there to be insufficient evidence to grant summary judgment in favor VW on the issue of likelihood of confusion, for the reasons set forth below.

### b.  *Strength of Mark*

VW argues that its mark is strong because it is federally registered and has been marketed extensively through the use of advertising. DK contends that the VW mark is not strong in the category of books. To determine a mark's strength, courts look to several factors including whether the mark is incontestible. *Daddy's Junky Music Stores*, 109 F.3d at 282. A mark is incontestible if it is not successfully challenged within five years of its registration. *Id.* (citing 15 U.S.C. § 1065). An incontestible mark "is presumed to be . . . a relatively strong mark." *Id.* (citation omitted).

---

manufacturer produced a toy truck, which resembled and used a similar grille design as the Hummer, a vehicle produced by GM. 468 F.3d at 410-11. The grill design specifically, and not the vehicle itself, was a registered trademark. *Id.* On appeal, the Sixth Circuit affirmed the district court's summary judgment ruling that the defendant's toy truck infringed GM's trademark and trade dress. *Id.* at 411, 420.

Courts also look to whether the recognition of a mark "is limited to a particular product or market segment." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991) (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980)). "The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion." *Amstar,* 615 F.2d at 259-260.

This factor, strength of the mark, weighs in favor of VW. Here, the NEW BEETLE design is incontestible. According to the United State Patent and Trademark Office website, the mark was published for opposition on September 12, 2000, more than five years ago. Furthermore, although DK argues that the strength of the NEW BEETLE design is limited to cars and does not extend to books, DK does not present any evidence of similar marks "already in use on different kinds of goods," the proper inquiry when challenging the strength of a mark in a particular market segment. *Id.*

### c.     *Relatedness of Services or Goods*

Construing the evidence in a light most favorable to DK, the VW car and the *Fun Cars* book are not related goods or services. VW argues that *Fun Cars* is a toy car and therefore similar to the actual NEW BEETLE car. Unlike the toy Hummer in *Lanard Toys*, however, the *Fun Cars* book is not "closely related to the actual car." *Lanard Toys*, 468 F.3d at 414. *Fun Cars* is a book with ten pressboard pages and plastic wheels. Various cars appear on the ten pages. The NEW BEETLE appears on the front and back covers as a three-dimensional car.

10

VW does not specifically present an argument as to the extent of how *Fun Cars* – if construed as a book – is related to the VW toy car packaged with *Wash Me*, the toy NEW BEETLE for Barbie, or the toy Hot Wheels NEW BEETLE.  Nevertheless, construing the evidence in a light most favorable to DK, these toy VW cars and the *Fun Cars* book are not related goods or services. The toy VW cars licensed by VW are just that – toys; on the other hand, *Fun Cars* is a book, albeit on wheels.

### d.   *Similarity of the Marks*

For purposes of summary judgment, the marks could be construed as similar.  To the extent that the *Fun Cars* book functions as a book--with ten pages, each describing a different type of "fun" car–as DK argues, *Fun Cars* is not similar to the NEW BEETLE design.

To the extent that the *Fun Cars* book functions as a toy car like the Hummer toy car in *Lanard Toys*, *Fun Cars* is similar to the NEW BEETLE design.  *Id.* at 413.  But *Fun Cars* is similar to the NEW BEETLE design only in part.  While *Fun Cars* closely resembles the two-dimensional side view of the NEW BEETLE design, unlike the toy Hummer in *Lanard Toys*, *Fun Cars* does not resemble all of the other possible two-dimensional views of the mark.  For instance, if one looks at the book from the direction of the book's spine, the book bears absolutely no resemblance to VW's mark.  Therefore, the Court concludes that this factor does not favor either party.

### e.   *Likely Degree of Purchaser Care*

The likely degree of customer care favors DK.  While courts generally conclude that

11

purchaser care is low with toys, *see e.g., id.*, as noted previously, for purposes of summary judgment, *Fun Cars* is a book and not a toy. The parties have not provided, and the Court has not located, any case law that addresses the degree of purchaser care with respect to children's books.

The Court therefore examines the record for any actual evidence of purchaser care and finds that, with a children's book, a parent is more likely to look at every page of the book, including the book's front and back cover. VW's expert concedes this point. (DK's Resp. To VW's Mot. For Summ. J. at 11.) Additionally, the Court finds that the book's back cover identifies the source of the book and thanks VW, making confusion less likely.

### f.    *Defendant's Intent in Choosing the Mark*

VW argues that DK intentionally copied the NEW BEETLE design to exploit the "goodwill and commercial magnetism" of the mark. (VW's Mot. For Summ. J. at 15.) VW further argues that DK's conduct demonstrates bad faith, because DK obtained licenses to use the trade dress of other manufacturers in other books and because DK received VW's cease and desist letters. (*Id.*) DK maintains that the shape of *Fun Cars* was chosen for "benign" reasons and that it demonstrated good faith by prominently featuring its own mark on the back of *Fun Cars*. (DK's Resp. To VW's Mot. For Summ. J. at 16.) DK also maintains that it obtained licenses to use the trade dress of other manufacturers such as John Deere in other books because those books "focus entirely on a single vehicle." (*Id.* at 17.) In its own motion for summary judgment, DK maintains, under a theory of estoppel, that it used the mark with VW's permission. (DK's Mot. For Summ. J at 19.)

As to intent, the Court first notes that "intent is largely irrelevant in determining if consumers

12

likely will be confused as to source." *Wynn Oil*, 839 F.2d at 1189.  This Court also finds that VW has failed to show that DK's decision to include the NEW BEETLE design in *Fun Cars* "was to confuse, mislead or deceive the public." *Id.*  VW merely believes that DK did so.  In fact, the record demonstrates that DK continued to use certain aspects of VW's trade dress that DK had previously used with VW's permission, a fact which weakens any accusations of intentional copying.  *See Monarch Licensing, Ltd. v. Ritam Intern. Ltd., Inc.*, 1992 WL 150641, at *7 (S.D.N.Y. June 15, 1992) (noting that when the defendant merely continues the use of a trade dress which it previously had used with the permission of the plaintiff, the inference that the defendant is attempting to benefit from strength of the trade dress is weak).  *Fun Cars* was first published in 1999.  VW allowed DK to use the photographs of VW's cars in 2000 and 2002.  (Exs. S and T, DK's Br.)

As to bad faith, the Court finds DK's argument more persuasive.  Although DK obtained a license from John Deere for the book *John Deere Tractor*, that book differs from *Fun Cars*. *Fun Cars* contains pictures of ten different cars; *John Deere Tractor* contains pictures of ten different types of John Deere tractors.  Moreover, although VW argues that DK received several cease and desist letters, DK has submitted written proof of permission to use the VW mark.  Accordingly, the intent factor appears to favor neither party.

### g. *Marketing Channels Used*

VW argues that this factor weighs in its favor because both of the parties' goods can be purchased online at amazon.com and in retail stores such as K-mart.  (VW's Mot. For Summ. J. at 15.)  DK concedes that *Fun Cars* is sold online at amazon.com and in retail stores such as K-mart,

13

but maintains that "*Fun Cars* is not sold in the same sections or departments as VW's licensed products." (DK's Resp. To. VW's Mot. For Summ. J at 15-16.) DK further maintains that it would be "absurd [to] conclu[de] that automobile parts and women's dresses move in the same channels of trade because both can be found at K-mart." (*Id.* at 16.)

For purposes of summary judgment, the Court finds that this factor favors DK. There is no evidence in the record to support VW's contention that VW's licensed toy products are sold in the same sections or departments as *Fun Cars*. Notably, this fact applies to the VW licensed product *Wash Me*, which arguably is the most closely related VW licensed product to *Fun Cars*.

### h.      *Likelihood of Expansion of the Product Lines*

VW argues that this factors weighs in its favor, because *Fun Cars* is already in direct competition with VW's licensed toys. (VW's Mot. For Summ. J. at 17.) DK maintains, citing *Lanard Toys*, that this factor is neutral because VW has not demonstrated a serious intent to expand into the book market. (DK's Resp. To. VW's Mot. For Summ. J at 17.) For purposes of summary judgment, the Court again notes that the *Fun Cars* is construed as a book. Further, there is no evidence in the record showing VW's intent to enter the children's books' market. Accordingly, this factor favors neither party. *Lanard Toys*, 468 F.3d at 414.

### i.      *Evidence of Actual Confusion*

VW submits a customer survey as proof that there is a likelihood of confusion as to the source of *Fun Cars*. The survey was conducted by Dr. Glenn L. Christensen, an Assistant Professor of Business Management at Brigham Young University. The survey concludes that 29.2% of the

14

survey-takers believed that *Fun Cars* was either put out by VW or with VW's authorization.  VW cites *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964 (10th Cir. 2002) for its argument that courts have consistently held that survey results showing confusion at or above 25% constitute strong evidence of actual confusion." (VW's Mot. For. Summ. J. at 16 (internal quotations omitted).)

DC argues that VW has not submitted any evidence of actual confusion.  DK maintains that Dr. Christensen's survey has serious flaws and should be accorded little weight.  DK maintains that the survey results are flawed because, among other things: the survey questions were misleading; and the survey was not objective.  (DK's Resp. To VW's Mot. Summ. J. at 10-13.)

"It is the trial court's responsibility to determine the probative value of a consumer survey, and it is appropriate for the trial court to accord little or no weight to a defective survey." *Ashland Oil, Inc. v. Olymco, Inc.*, 1995 WL 499466, at *4 (6th Cir. Aug. 21, 1995) (citing *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1268 (6th Cir.1985)).  For purposes of summary judgment, the Court concludes that the survey should be accorded minimal weight.

The Court first discusses the *Sally Beauty* case cited by VW.  Contrary to VW's assertion, it does not appear that the *Sally Beauty* court held that a survey result of 25% or more mandates a finding of likelihood of confusion in all cases; rather, it appears as though the court confined its ruling to the particular facts before it.  *Sally Beauty*, 304 F.3d at 980.  It appears that most other courts have declined to craft such black letter rule.

*Sally Beauty* is also distinguishable from the instant case.  *Sally Beauty* involved the sale of competing line of beauty supply products with similar brand names (GENERIX vs. Generic Value

15

Products), 304 F.3d at 970, and nearly identical packaging.  *Id.* at 979.  As noted by that court:

> Viewing the parties' trade dresses singly, an ordinary consumer would be struck by the high degree of similarity between them. Both trade dresses consist of white, bullet-shaped bottles with flat, black tops. Near the top of the bottles, both dresses have black-and-white trade marks which feature either the word "Generic" or the word "GENERIX" prominently. In the middle of the bottles, each product compares itself to a salon brand product. The back of both bottles list its product's ingredients side-by-side with those of a salon brand product. The overall color scheme of the two dresses consist of black and white; no other color is used in either dress. Although the dresses are not identical, they are remarkably similar. This factor therefore weighs heavily in favor of Sally Beauty.

*Id.*  *Fun Cars* is not sold on the same store shelves as VW licensed products.  *Fun Cars* is not packaged in a manner similar to VW's licensed products.

The Court finds that the VW's consumer survey should be afforded minimal weight for at least two additional reasons.  First, the case law suggests that VW's survey used leading questions.  *See Sports Authority, Inc. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 939 (E.D. Mich. 1997) (finding that the survey asked leading questions by asking survey-takers if the defendant "needed permission from" the plaintiff to use a mark).  Here, as in *Sports Authority*, VW asked survey takers, in a multiple-choice type question, if DK needed permission to use the mark.  (Dkt. #63-1 at 23.) While VW did not specifically ask in the survey if permission was required from VW to use the VW mark, the Court finds that this question, in light of the shape of *Fun Cars*, effectively served as a question asking if DK was required to obtain permission from VW to use the mark.

Second, the record suggests that the survey may have lacked objectivity.  Section 11.493 of the Fourth Edition of the Manual for Complex Litigation indicates that courts should consider, in

16

determining the weight to attach to a survey, whether it "was conducted in anticipation of litigation and by persons connected with the parties or counsel or by persons aware of its purpose in the litigation." The Sixth Circuit has adopted this view in the context of a trademark survey presented by a plaintiff. *See, Frisch's Restaurant,* 759 F.2d at 1268 (noting that the survey "tends to reflect an advocate's point of view;" holding that expert's "contacts with plaintiff's counsel unduly influenced his approach to the formulation of the survey instrument"). DK argues that Dr. Christensen's survey may be biased, because the survey was conducted in anticipation of litigation and because Dr. Christensen is a good friend of one of VW's attorneys. (DK's Resp. To VW's Mot. For Summ. J. at 14-15.) VW concedes that Dr. Christensen is a "neighbor and friend of one of VW's lawyers," but maintains that the survey was objective. (VW's Reply to VW's Mot. For Summ. J. at 5.) For purposes of summary judgment, the Court finds DK's argument more persuasive. Like the court in *Frisch's Restaurant,* this Court is also "concerned" about the relationship between Dr. Christensen and one of VW's lawyers and therefore questions the objectivity of the survey. 759 F.2d at 1268.

Construing the evidence in a light most favorable to DK, a material question of fact exists as to whether or not DK has infringed VW's NEW BEETLE design mark. While the strength of the VW mark weighs in VW's favor and the evidence of actual confusion weighs partly in its favor, three of the *Frisch* factors – relatedness, degree of purchaser care, and marketing channels used – weigh in favor of DK. The remaining three factors – similarity, intent in selecting the mark, and likelihood of expansion – favor neither party. Accordingly, VW's Motion for Summary Judgment

17

in connection with Counts I and IV of the Amended Complaint is denied.

### 2.     Trade Dress Infringement, Count II

Even though the tests from trademark and trade dress infringement differ, the parties' briefs conflate them.  To recover for trade dress infringement under 15 U.S.C. § 1125(a) (Count II), a plaintiff must prove, by a preponderance of the evidence, that: 1) the trade dress is not functional; 2) the trade dress is distinctive in the marketplace and has acquired "secondary meaning," thereby indicating the source of the goods; and 3) the trade dress of the accused product is confusingly similar. *Lanard Toys*, 468 F.3d at 414 (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)).

To demonstrate secondary meaning, a plaintiff must show evidence that "in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself." *Lanard Toys,* 468 F.3d at 418 (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982)).  A court must apply a seven-factor test to determine whether secondary meaning exists in a trade dress case: 1) direct consumer testimony; 2) consumer surveys; 3) exclusivity, length, and manner of use; 4) amount and manner of advertising; 5) amount of sales and number of customers; 6) established place in the market; and 7) proof of intentional copying. *Id.* (citations omitted).  A court must "focus on secondary meaning developed before infringement." *Id.* at 419.  However, a court may consider post-infringement evidence of secondary meaning if the court accounts for "the amount of time passed between th[e] date [of the post-infringement evidence] and the date of infringement." *Id.* The exterior design and

18

appearance of well-known automobiles have acquired secondary meaning and are protected as trade dress. *Chrysler Corp. v. Newfield Publications, Inc.*, 880 F. Supp. 504, 510 (E.D. Mich. 1995) (citing *Esercizio v. Roberts*, 944 F.2d 1235, 1240 (6th Cir. 1991)).

The parties' briefs do not address the three factors of the trade dress infringement test. Nevertheless, the Court embarks upon its own analysis of these factors. Assuming that VW's mark is nonfunctional and has acquired secondary meaning, for purposes of summary judgment, VW's trade dress claim nevertheless fails. As noted previously in the context of trademark infringement, VW has not sufficiently demonstrated a likelihood of confusion. Accordingly, VW's Motion for Summary Judgment in connection with the trade dress infringement claim in Count II of the Amended Complaint is denied.

### 3.    Dilution, Count III

Dilution law "is not based on a likelihood of confusion standard, but . . . exists to protect the quasi-property rights a holder has in maintaining the integrity and distinctiveness of his mark." *Audi AG*, 469 F.3d at 547 (citations omitted). To prevail on a federal dilution claim under 15 U.S.C. § 1125(c), a plaintiff must show: 1) that its trademark is famous and distinctive; 2) that the defendant's use of the mark was in commerce; 3) that the defendant's use of the mark in commerce began after the mark became famous; and 4) that the defendant's use of the mark caused dilution of the distinctive quality of the mark. *Id.* (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004)). 15 U.S.C. § 1125(c)(1) protects marks from dilution by tarnishing and dilution by blurring. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 431 (2003). 15 U.S.C. § 1125(c)(1)

19

provides, in pertinent part, that:

> [T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

The parties do not dispute the first three factors of the dilution test. VW's trademark is famous and distinctive, and DK used its version of the mark in commerce after the mark became famous. Nevertheless, there is a genuine issue of material fact as to VW's dilution claim. For purposes of summary judgment, VW has failed to demonstrate either actual dilution or the likelihood of dilution.[5] Dilution means "the lessening of the capacity of a famous mark to identify and distinguish goods or services[.]" *Moseley*, 537 U.S. at 433 (citing 15 U.S.C. § 1127). Dilution by tarnishing is the type of dilution which would lead a consumer to associate VW's NEW BEETLE design with a negative quality or condition. *Id.* at 427. Dilution by blurring is the type of dilution

------

[5] The prior version of the statute provided that "[t]he owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark . . . if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark[.]" 15 U.S.C. § 1125(c)(1) (2000).

The Sixth Circuit has not addressed the issue of whether the new revision of 15 U.S.C. § 1125(c)(1) has a retroactive effect. Unlike the old version of the statute, the new revision does not require an actual showing of dilution. 15 U.S.C. § 1125(c)(1) (2008.) This distinction does not affect the outcome of this case, however, because, as the Court discusses, VW fails to show either actual dilution or a likelihood of dilution.

which would lessen VW's ability to identify and distinguish its products. *Id.* "[T]he mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Id.* at 433. In other words, dilution by tarnishing or blurring "is not a necessary consequence of mental association." *Id.* at 434.

For purposes of summary judgment, VW has failed to show either actual dilution or the likelihood of dilution. Actual dilution may be shown with evidence that the marks are identical. *Id.* (noting that "actual dilution can reliably be proved . . . [where] one where the junior and senior marks are identical."). VW has not shown actual dilution because, construing the evidence in a light most favorable to DK, VW has not shown that its mark and *Fun Cars* are identical. As noted previously, they are partly similar at best.

Nor has VW shown likelihood of dilution. Here, the record demonstrates, by way of VW's consumer survey, that actual consumers may make mental associations between *Fun Cars* and VW. However, the record does not demonstrate that a consumer is likely to form a different impression of VW after coming into contact with *Fun Cars*. The record also does not demonstrate that there has been, or likely will be, a lessening of VW's ability to identify and distinguish its cars as a result of DK's release of *Fun Cars*. Construing the evidence in a light most favorable to DK, VW has not shown dilution by tarnishment or by blurring. *Id.* Accordingly, VW's Motion for Summary Judgment is denied in connection with its dilution claim in Count III of the Amended Complaint.

**D.     DK's Motion for Summary Judgment on its Affirmative Defenses as to the NEW BEETLE Design**

1.        **Non-Use of VW's Trademarks**

DK argues, citing *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990), that it does not use VW's mark as a trademark in *Fun Cars* because the use of the mark is not intended to and does not indicate the source of the book.  (DK's Mot. For Summ. J. at 10.)  DK argues that the photograph of the NEW BEETLE, which appears on the cover of *Fun Cars*, is used "editorially, to identify a car that is being discussed in the book[.]"  (*Id.*)  VW argues that *Pirone* is distinguishable from the instant case.  VW maintains that unlike here, the photograph at issue in *Pirone* was found not to be a trademark.  (VW's Resp. To DK's Mot. For Summ. J. at 2-3.)  VW also maintains that, unlike here, the photograph at issue in *Pirone* was found not to cause confusion.  (*Id.* at 3.)

If a defendant uses a trademark in a non-trademark way, the laws of trademark infringement and false designation are not implicated.  *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir. 2003).  The use of a registered trademark on a book cover may be a non-trademark use if the mark is merely descriptive of the book's subject matter and the source of the book is clearly indicated.  *Pirone*, 894 F.2d at 584.  *Pirone* involved the use of a Babe Ruth photograph on the cover of a baseball calendar which featured several famous baseball players.  *Id.* at 581.  The *Pirone* court held that even if a celebrity "could show that . . . [she] has established a trademark in a particular pictorial representation of [herself], such a trademark would not cover all photos."  *Id.* at 583.

Although *Pirone* applies to the unauthorized use of a celebrity's likeness, the general principle that photographs of a valid trademark are not always entitled to trademark protection

22

applies generally. *See Rock & Roll Hall of Fame Museum v. Gentile Productions*, 134 F.3d 749, 755 (6th Cir. 1998) (noting that a picture or drawing of a design trademark may not receive the same protection as the trademark itself, unless the plaintiff shows that "one particular image of . . . [the mark] has been used consistently"). Accordingly, the Court finds that the general principles set forth in *Pironi* are applicable here. *ETW*, 332 F.3d at 923.

In *Rock & Roll*, the plaintiff museum had obtained state trademark protection for its building design and was in the process of obtaining federal trademark protection. *Rock & Roll,* 134 F.3d at 750. The museum sold, among other things, posters which included photographs of the building. *Id.* at 751-52. The defendant also sold a poster which included a picture of the building. *Id.* On appeal, the court denied the plaintiff's motion for preliminary injunction, concluding that the plaintiff failed to show a likelihood of succeeding on the merits of its trademark infringement claim. *Id.* at 750. The court held that, based upon the record before it, the plaintiff had not "established a valid trademark in every photograph which . . . prominently displays the front of the Museum's building[.]" *Id.* at 755. However, the court noted "that a photograph which prominently depicts another person's trademark might very well, wittingly or unwittingly, use its object as a trademark." *Id.* at 754.

The Court finds that the facts here are very similar to those presented in *Rock & Roll*. While VW has a valid mark in the NEW BEETLE design, the record does not demonstrate that VW has established a valid trademark in every photograph of the NEW BEETLE. DK's use of the mark therefore may be a non-trademark use. On the other hand, DK's use of the mark may be a trademark

23

use because DK arguably depicts the mark on the cover of *Fun Cars* in a prominent manner. Accordingly, the question of whether DK uses VW's mark as a trademark in *Fun Cars* is one for the jury.

### 2.      First Amendment

DK argues that its use of VW's trademark in *Fun Cars* is protected by the First Amendment. "The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures." *ETW*, 332 F.3d at 924 (citation omitted). "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Id.* (citation omitted). "Even pure commercial speech is entitled to significant First Amendment protection." *Id.* Commercial speech is speech which does no more than propose a commercial transaction. *Id.* at 925 (citations and internal edits omitted).

In *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003), the Sixth Circuit adopted the test from *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ("*Rogers* test"), to determine whether the First Amendment trumps trademark rights. *ETW*, 332 F.3d at 928. The Sixth Circuit held that the *Rogers* test is "[not] limited to titles of artistic works. . . [and] is generally applicable to all cases involving literary or artistic works where the defendant has articulated a colorable claim that the use of a celebrity's identity is protected by the First Amendment." *Id.* at 928 n.11. *Rogers* involved the use of a celebrity's name and did not concern the use of a design or trade dress. *See Mattel, Inc. v.*

24

*Walking Mountain Productions*, 353 F.3d 792, 808 n.14 (9th Cir. 2003) (noting that "[t]here may

be something unique about the use of a trademark in the title of a work that makes non-titular uses

of trademarks or trade dress incompatible with the *Rogers* test"). In the Sixth Circuit, an analysis

of the *Frisch* factors is unnecessary where a defendant satisfies the *Rogers* test. *ETW*, 332 F.3d at

928 n.12. Under the *Rogers* test, a defendant's use of a mark subject to trademark protection will

be immune from trademark liability if the use of the mark "ha[s] artistic relevance to the underlying

work and . . . does not explicitly mislead as to the source of the work." *Id.* at 937.

DK argues that its use of the VW mark is artistically relevant to the theme, story and artistic

design of *Fun Cars*. (DK's Mot. For Summ. J. at 12.) DK argues that *Fun Cars* is "an encyclopedic

book for children about many different cars that are fun." (*Id.* (internal quotations removed).) DK

further argues that "it is necessary for DK to include photographs of cars in order to effectively

communicate the book's message." (*Id.*) VW maintains that the *Rogers* test is not applicable to

cases which involve registered trademarks, because the *Rogers* test is limited to cases which involve

celebrity identity or image. (VW's Resp. To DK's Mot. For Summ. J. at 5.) VW maintains, citing

*Rogers*, that a slight risk of consumer confusion defeats a First Amendment defense. (*Id.*) VW also

maintains that the *Rogers* standard has never been construed to permit a registered mark to be used

in direct competition with the trademark holder. (*Id.*)

The Court finds no merit in VW's contentions. First, the *Rogers* test is not limited to cases

which involve celebrity identity or image. *See e.g., Chrysler Corp. v. Newfield Publications, Inc.*,

880 F. Supp. 504, 512 (E.D. Mich. 1995) (applying the First Amendment defense in the context of

the alleged infringement of an automaker's mark). Second, under the Sixth Circuit's interpretation of the *Rogers* test, a slight risk of customer confusion will not necessarily defeat a First Amendment defense. *ETW*, 332 F.3d at 928 n.12 (noting that the likelihood of confusion test is unnecessary if the *Rogers* test is satisfied). Third, VW has not identified any case law which precludes the use of the *Rogers* test where the First Amendment use of the mark is in direct competition with the use of the trademark holder.

To the extent that *Fun Cars* is construed as a book, DK's argument has merit. One can reasonably conclude upon inspection of *Fun Cars* that DK's use of the NEW BEETLE design in *Fun Cars* is relevant to the book's underlying "fun" theme. Nevertheless, while the record demonstrates that DK's use of the mark is relevant to the "fun" theme of *Fun Cars*, DK does not put forth an argument as to the second prong of the *Rogers* test; that is, the record does not contain sufficient evidence in the record to demonstrate that DK's use of the NEW BEETLE design "does not explicitly mislead as to the source of the work." *ETW*, 332 F.3d at 937. Accordingly, construing the evidence in a light most favorable to VW, even if *Fun Cars* is construed as a book, a material question of fact remains as to whether DK may invoke the First Amendment defense.

### 3.    Nominative Fair Use

DK argues that its use of VW's trademark in *Fun Cars* is protected by the doctrine of nominative fair use. The Ninth Circuit introduced the nominative fair use defense in *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir.1992). To be protected under the nominative fair use defense, a commercial user must satisfy the following requirements: 1) the

26

product must not be readily identifiable without the mark; 2) the user must utilize only so much of the mark "as is reasonably necessary to identify the product;" and 3) the user cannot do anything "that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. The Sixth Circuit has explicitly declined to adopt the nominative fair use defense, finding that its traditional likelihood of confusion test sufficiently captures the potential for trademark misuse. *PACCAR, Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 256 (6th Cir. 2003). At the very least, therefore, "the status of the nominative fair use defense is unclear within this circuit." *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Center, Inc.*, 2007 WL 4207158, at *8 (S.D. Ohio Nov. 26, 2007) (internal quotations omitted).

Based upon the evidence contained within the record, the Court denies DK's Motion for Summary Judgment under the defense of nominative fair use. First, this Court is not in a position to adopt the doctrine when the Sixth Circuit has explicitly declined to do so. *Chrysler Corp. v. Newfield Publications, Inc.*, 880 F. Supp. 504, 512 (E.D. Mich. 1995). Second, even assuming the viability of the defense, DK's prominent use of VW's NEW BEETLE design on the front and back covers of *Fun Cars* raises a question of fact as to whether DK can satisfy the second and third prongs of the nominative fair use test. In constructing *Fun Cars* to mirror the two-dimensional shape of VW's NEW BEETLE design, DK may have adopted more of the mark than necessary and, in doing so, caused consumer confusion as to sponsorship. *Id.*

### 4.     Laches

DK argues that its use of VW's trademark in *Fun Cars* is protected by the doctrine of laches.

27

Laches is the "negligent and unintentional failure to protect one's rights." *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). A party asserting laches must show lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting it." *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 493 (6th Cir. 2007) (quoting *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007)). Under Sixth Circuit and Michigan law, a three-year delay establishes a presumption that a plaintiff has negligently failed to protect her rights. *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). The period of delay commences when a plaintiff has "actual or constructive knowledge of the alleged infringing activity." *Id.* (quoting *Dana Corp. v. IPC Ltd. Partnership*, 674 F.Supp. 581, 583 (E.D. Mich.1987)). Excused delays in bringing suit, however, may toll the presumption of laches. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc) (noting that "[e]xcuses which have been recognized in some instances . . . include . . . other litigation [and] negotiations with the accused") (citations omitted).

"Mere delay in asserting a trademark-related right [alone] does not necessarily . . . support the defense of laches. . . [t]here must also have been some detriment due to the delay." *Bridgestone Firestone Research, Inc. v. Automobile Club De L'Quest De La France*, 245 F.3d 1359, 1362 (Fed. Cir. 2001). "Two general categories of prejudice may flow from an unreasonable delay: prejudice at trial due to loss of evidence or memory of witnesses, and economic prejudice based on loss of time or money or foregone opportunity." *Id.* (citing *Aukerman*, 960 F.2d at 1033). "Even if the elements of laches are established, however, a court need not bar a plaintiff's suit. The application

28

of the laches defense is discretionary, and as an equitable matter, the district court is to look to all the facts and circumstances of the case and weigh the equities of the parties." *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).

DK alleges that VW filed suit more than four years after learning about DK's use of the NEW BEETLE design in *Fun Cars*.  DK alleges that VW was "clearly on notice" of *Fun Cars* by June 25, 2001, the date on which VW representatives sent a letter to a DK subsidiary "complaining about" *Fun Cars*.  (DK's Mot. For Summ. J. at 19.)[6]  DK further alleges that VW did not file suit until more than three years later, on July 5, 2005.  (*Id.*)  DK therefore argues that it has presumptively established the applicability of the laches defense.  (*Id.*)  DK does not present any arguments in connection with prejudice.

VW maintains that, during the period of alleged delay, from 2001 to 2004, it attempted to resolve the dispute with DK through correspondence.  VW maintains, citing *Porsche Cars North American v. Manny's Porshop Inc.*, 972 F. Supp. 1128, 1132-33 (N.D. Ill. 1997), that time spent attempting to resolve a dispute through extra-judicial means does not constitute delay.[7]

_____

[6] The June 25, 2001 letter to which DK refers as proof of VW's actual notice of *Fun Cars* is not a letter regarding the infringement on *Fun Cars*; rather, the letter refers to DK's possible infringement of VW marks in connection with three other books: *First Steps to Reading Book*; *The Ultimate Car Sticker Book*; and *Wheelie Book*).  (Dkt. #60-30 at 2-3.)

[7] *Manny's Porshop* stands for the proposition that a plaintiff should not necessarily be barred from claiming irreparable harm at the preliminary injunction stage if the plaintiff delayed bringing suit in an attempt to settle the matter.  972 F. Supp. at 1132-33.  On the other hand, *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc), supports VW's position that settlement efforts may excuse a delay in bringing suit.  Accordingly,

The Court denies DK's request for summary judgment under a theory of laches. First, the evidence in the record fails to show prejudice. DK has not alleged facts to show evidentiary or economic prejudice. Second, even if the June 25, 2001 letter evidenced VW's actual notice of *Fun Cars*, DK has failed to show that VW's delay in bringing suit, while more than three years, was unreasonable. VW's delay in bringing suit was not unreasonable because during the delay, VW engaged in efforts with DK to resolve the dispute. *Aukerman*, 960 F.2d at 1033. VW sent letters to DK objecting to DK's use of VW marks in DK's books on June 25, 2001, January 22, 2002, and on or about April 23, 2004. (VW's Resp. To DK's Mot. For Summ. J. at 9; Gloria Phares[8] Decl. ¶ 11, 13 (citing Dkt. # 10-7, 10-8); Dkt. # 10-1.) Construing this evidence in a light most favorable to VW, VW's delay in bringing suit, to attempt to resolve the dispute by extra-judicial means, was not an unreasonable delay. Accordingly, the Court denies DK's Motion for Summary Judgment as to its laches defense.

### 5.   Estoppel

DK argues that its use of VW's NEW BEETLE design in *Fun Cars* is protected by the doctrine of estoppel. DK argues that it was assured by VW that DK could use NEW BEETLE pictures in future DK publications. (DK's Mot. For Summ. J. at 19.) Specifically, DK argues that it was misled by VW's affirmative representation that DK could use the NEW BEETLE photograph

---

the Court analyzes VW's claim under the law set forth in *Aukerman*.

[8] Gloria Phares is a member of Patterson, Belknap, Webb & Tyler LLP, counsel for DK.

obtained in connection with *Big Book of Cars* in any future DK publication.  (*Id.*)  DK relies on an April 23, 2002 email communication between the parties to support its argument.  In the email, Nicola Deschamps, Project Editor of DK's Children's Books Preschool Department, posed the following question to Kate Thompson, Product Affairs Manager of VW's Press and Public Relations Department:

> Would I, or my colleagues, need to contact you [to] reuse these photographs in future publications, or permission now?

(Dkt. 60-22 at 8; DK's Mot. For Summ. J., Ex. T.)  Kate Thompson responded:

> No - to be honest Nicola, as they are your photos, you can use them whenever you want.  It's not a problem for me.

(*Id.*)  At her deposition, Kate Thompson indicated that she did not "specifically remember Nicola saying [in] what sort of [future] book" the NEW BEETLE photographs would be used.  (Dkt. 60-20 at 8; DK's Mot. For Summ. J., Ex. R.)

VW maintains that "VW did not assure DK, either expressly or by implication, that VW would not assert its trademark rights against *Fun Cars*."  (VW's Resp. To. VW's Mot. For. Summ. J. at 15.)  VW further maintains that "VW's provision of an automobile to DK for use in an encyclopedia falls far short of an "assurance" that VW would not assert its trademark rights if those photographs were every used to make . . . a book that amounts to a toy car."  (*Id.* at 15-16).

A defendant to an infringement suit must prove three elements to be successful in asserting the defense of equitable estoppel: 1) misleading conduct that leads the defendant to believe that the plaintiff will not bring an infringement suit; 2) reliance on the misleading conduct by the defendant;

31

and, 3) material prejudice suffered by the defendant as a result of the defendant's reliance.  *See Scholle Corp. v. Blackhawk Molding Co. Inc.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998) (in the context of patent infringement).

Neither party cites *Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469 (Fed. Cir. 1998), but the Court finds that this opinion best describes the requisite proof necessary to establish the defense of estoppel.  *Scholle* provides an example of misleading conduct, reliance on the conduct, and economic material prejudice in the context of patent infringement. 133 F.3d at 1472. In *Scholle*, the plaintiff and defendant first exchanged correspondence when the plaintiff made an accusation of infringement of technology licensed by the defendant from a third party.  *Id.* at 1470. The defendant subsequently designed its own product with different technology for which a patent was issued.  *Id.*  When the defendant sent samples of its new product to the plaintiff, the plaintiff expressed no indication that the defendant's technology infringed upon the plaintiff's technology. *Id.*  Immediately thereafter, the defendant invested more than $700,000 in production tooling to manufacture its product.  *Id.* at 1471.  During the three years after the samples were sent to the plaintiff, high level executives from both companies shared an open dialogue, discussing plaintiff's other litigation as well as defendant's continuing growth in the marketplace.  *Id.*  The companies even discussed a possible merger.  *Id.*

The *Scholle* court held that the defendant's silence constituted misleading conduct and that the defendant reasonably relied on that conduct to its economic detriment by heavily investing in tooling.  *Id.* at 1472.  Moreover, the court noted that if the plaintiff had "simply sent . . . a letter"

to the defendant that the plaintiff was not waiving any right to sue the defendant during the course of their continued interaction, the plaintiff would have been in a better position to deflect estoppel the defense. *Id.* at 1472 n.2.

The Court denies DK's request for summary judgment under a theory of estoppel. Here, DK has not demonstrated the third element of the estoppel test, because DK does not allege facts to show evidentiary or economic prejudice. Additionally, construing the evidence in a light most favorable to VW, DK has not satisfied the other elements of the estoppel test because genuine issues of material fact exist as to VW's possible acquiescence to DK's use of the mark in *Fun Cars*. Unlike *Scholle*, DK did not provide VW with an actual copy of *Fun Cars* while obtaining permission to reuse the photograph. Furthermore, the record indicates that VW sent DK at least four letters objecting to DK's sale of *Fun Cars*. Accordingly, the Court denies DK's Motion for Summary Judgment as to its estoppel defense.

## VI.    CONCLUSION

In light of the foregoing,

IT IS ORDERED that Defendant's Motion for Summary Judgment **[Doc. #59, filed August 31, 2007]** is **GRANTED IN PART and DENIED IN PART**. The claims as to the VW EMBLEM and BEETLE marks are DISMISSED. The claims regarding the NEW BEETLE design mark remain.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment as to Counts I through IV **[Doc. #61, filed August 31, 2007]** is **DENIED**.

33

IT IS FURTHER ORDERED that the parties attend a Status Conference to be held on

**Monday, May 18, 2009, 3:15 p.m.**


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 31, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

34